MARIE F. WASIE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 27913-84.          Filed May 12, 1986.

---

*Patrick F. Flaherty*, for the petitioner.
*Jack Forsberg*, for the respondent.

## OPINION

GERBER, *Judge*: This case is before the Court solely upon petitioner's motion for litigation costs pursuant to section 7430.[1] The issues for consideration are (1) whether respondent's position in the civil proceeding was unreasonable, and (2) whether pre-litigation conduct of respondent should be considered in determining reasonableness and, if so, whether pre- and/or post-litigation costs should be awarded.

### Background

The record in this case consists of the parties' pleadings, motions, memoranda of authorities, documents attached to the above, and oral argument offered at a September 18, 1985, hearing on petitioner's motion at Minneapolis, Minnesota.

Respondent, in a statutory notice of deficiency dated May 9, 1984, determined first tier excise tax deficiencies totaling $49,810.83 and second tier excise tax deficiencies totaling $30,000 against petitioner, a foundation manager, for the

---

taxable years 1980, 1981, and 1982 pursuant to section 4941. The determination was based upon petitioner's participation, as a foundation manager, in an act of self-dealing between the Wasie Foundation (Foundation) and Murphy Motor Freight Lines, Inc. (Murphy).

In June 1980, Murphy purchased 438,680 shares of its own common stock from Foundation by a 25-percent cash payment and 75 percent in subordinated 7-year debentures bearing 8¼-percent interest for a certain period of time. During the period that the 8¼-percent debentures were outstanding, the prime rate ranged between 15 percent and 20 percent.

Murphy may be considered a "self-dealer" because of a donation to Foundation of less than $10,000 several years before. The section 4941(a)(1) (5-percent) initial excise tax on a self-dealer would have approximated $118,000 and the section 4941(b)(1) (200-percent additional) excise tax would have approximated $2,600,000 for the 3-year period. The section 4941(b)(1) additional tax can be avoided by correction of the act of self-dealing, which in this setting would have been payment of the excess of the fair market value of the use of money over the amount actually paid. Murphy might have had to pay over one-half million dollars to Foundation to correct the difference between the market rate and 8¼-percent rate on the debentures.

Petitioner argues that respondent took no action with regard to Murphy and instead permitted Murphy to obtain special legislation to alleviate any section 4941 burden concerning the purchase of the 438,680 shares of common stock. Petitioner goes a step further and accuses respondent of conspiring with Murphy to facilitate the statutory change which provided relief to Murphy. The explanation of section 312 of the Deficit Reduction Act of 1984, Pub. L. 98-369 (July 18, 1984), prepared by the staff of the Joint Committee on Taxation, did specifically mention Murphy, and the provisions clearly provide relief for petitioner's predicament.[2]

---

[2]The General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 (Joint Comm. Print 1984) provides at pages 698-699:

J. *Exception to Self-Dealing Rules for Certain Stock Transactions (sec. 312 of the Act and Code sec. 4941)*

Petitioner and Foundation were averse to the statutory relief and at all times wished respondent to assert section 4941 excise tax against Murphy. If respondent had issued a statutory notice to both Murphy and petitioner, Foundation would have benefited from Murphy's correction of the self-dealing by payment of about one-half million dollars to Foundation, and petitioner would have been responsible for

*Prior Law*

The Tax Reform Act of 1969 in effect prohibited certain transactions between a private foundation and disqualified persons (including substantial contributors), and imposed excise taxes for violations of these rules. The transactions prohibited as "self-dealing" generally include * * * (2) the lending of money or other extension of credit between a private foundation and disqualified person (sec. 4941)

*Reasons for Change*

* * *once a donor to a private foundation was treated as a substantial contributor and hence as a disqualified person, that person retained status as a disqualified person forever, regardless of whether the relative value of the donor's contributions significantly diminished over time by reason of another substantial contribution to the foundation.* * *

In general, the Congress believed that this change should apply prospectively. However, it was understood that the rule that substantial contributors retain forever their status as disqualified persons has resulted in the application of the self-dealing rules in a case involving the sale of publicly traded stock of Murphy Motor Freight Lines, Inc. (the "Company") by the Wasie Foundation to the Company. In that case, the Company was treated as a disqualified person solely because of contributions of less than $10,000 early in the life of the Wasie Foundation. As a result, the later sale of stock by the Wasie Foundation to the Company, pursuant to the settlement of litigation involving control of the Company was treated as an act of self-dealing. The Congress believed that the Company, under the unusual facts involved, should not be subject to section 4941 taxes merely because of its earlier contribution so long as the total consideration paid to the Wasie Foundation (i.e., the amount of cash and the fair market value of any notes received for the stock by the Wasie Foundation in connection with such purchase) was equal to or exceeded the value of the stock at the time of the sale.

*Explanation of Provision*

The Act provides that Code section 4941 is not to apply to the purchase during 1978 of stock from a private foundation (and to any note issued in connection with such purchase) if (1) consideration for the purchase equaled or exceeded the fair market value of the stock at the time of the sale; (2) the purchaser of the stock did not make any contribution to the foundation at any time during the five-year period ending on the date of the purchase; (3) the aggregate contributions to the foundation by the purchaser before such date were both less than $10,000 and also less than two percent of the total contributions received by the foundation as of that date; and (4) the purchase was pursuant to the settlement of litigation involving the purchaser. That is, under the Act, Code section 4941 is not to apply in the case of the 1978 sale of stock of Murphy Motor Freight Lines, Inc. by the Wasie Foundation to Murphy Motor Freight Lines, Inc. and the related financing by the Wasie Foundation provided that the total consideration received (i.e., the sum of the cash and the value of the notes) equaled or exceeded the fair market value of the stock at the time of the sale.

*Effective Date*

The provision is effective on enactment and applies retroactively to the 1978 transactions described above. In addition, the Act provides that if credit or refund of any overpayment of section 4941 taxes resulting from the provisions of section 312(a) of the Act is precluded prior to close of the one-year period beginning on the date of enactment (July 18, 1984) by the operation of any law or rule of law, a refund or credit of such section 4941 taxes previously paid with respect to such 1978 transactions may be made or allowed if a claim for refund or credit is filed before the close of such one-year period.

only the first tier tax of about $50,000. Apparently, in anticipation of the legislation, respondent did not issue a statutory notice to Murphy and requested petitioner to execute a waiver as to the statute of limitations on assessment. Petitioner refused and respondent issued a statutory notice to petitioner, without first issuing a notice to Murphy.

## Discussion of Petitioner's Motion

Petitioner contends that respondent is not permitted to issue a statutory notice to a foundation manager without first issuing a statutory notice to the self-dealer. Sections 4941(a)(2) and 4941(b)(2) provide, "In any case in which a tax [or an additional tax] is imposed by paragraph (1), [there is imposed on the foundation manager]." "[P]aragraph (1)" concerns the tax on self-dealers. Petitioner argues that the statutory use of the word "imposed" would require respondent to issue a statutory notice to the self-dealer before a statutory notice may be issued to the foundation manager. Although petitioner's argument infers that respondent did not have statutory authority to issue a statutory notice to her, petitioner did not file a motion to dismiss for lack of jurisdiction to summarily dispense with respondent's determination. Instead, petitioner filed a petition invoking the jurisdiction of the Court and alleging that respondent's notice was defective and that the second tier tax (sec. 4941(b)(2)) should not be imposed on petitioner because it is not within her control to correct the act of self-dealing. Furthermore, petitioner did not seek summary judgment or any other abbreviated method of case resolution.

The sequence of events is instructive in this case. The statutory notice was mailed on May 9, 1984, after petitioner's refusal to extend the statutory period of limitation on assessment. The "relief provision" (sec. 312) was enacted into law on July 18, 1984. The petition was filed on August 6, 1984, and respondent's answer conceding the section 4941 issues was filed on October 17, 1984. Six months later (on April 18, 1985) this case was noticed for trial on September 9, 1985. On September 9, 1985, the parties filed a stipulation of settled issues which disposed of all issues in the statutory notice in petitioner's favor, leaving for our

consideration petitioner's motion under section 7430 for costs and fees.

### Discussion of Law

Petitioner contends that respondent's actions, both before and after the issuance of the statutory notice, were unreasonable within the meaning of section 7430(c)(2)(A)(i). Respondent agrees[3] that petitioner "substantially prevailed with respect to the amount in controversy," but that respondent's position was not unreasonable and, even if it were, petitioner would be limited to recovery of costs and fees incurred in "litigation" (from the time of filing a petition with this Court).

This Court held that any fees or costs awarded under section 7430 are to be measured by looking at the reasonableness of respondent's position from the time of the filing of a petition. *Baker v. Commissioner*, 83 T.C. 822, 827 (1984), vacated and remanded 787 F.2d 637 (D.C. Cir. 1986, 57 AFTR2d 86-1106, 86-1 USTC par. 9311).

The District of Columbia Circuit in its opinion vacating and remanding *Baker*, specifically supported this Court's interpretation of section 7430, as follows:

> Our view of this case accords with that of the Tax Court a good part of the way. We agree that section 7430 and its legislative history are both literally and sensibly read to cover only costs incurred once litigation commences, and that the relevant *position* of the United States is the one taken *in the civil proceeding.* * * * [787 F.2d at—(57 AFTR2d 86-1106, at 86-1109, 86-1 USTC par. 9311, at 83,630). Emphasis supplied.]

This matter was remanded for a factual determination concerning the specific facts. The Court of Appeals' *Baker* holding regarding costs incurred once litigation commences is in accord with another Circuit Court and several District Courts, including petitioner's Minnesota district. *United States v. Balanced Financial Management, Inc.*, 769 F.2d 1440 (10th Cir. 1985); *Zielinski v. United States*, an unreported case (D. Minn. 1984, 54 AFTR 2d 84-5132, 84-1 USTC par. 9514); *Walsh v. United States*, an unreported case (D. Minn. 1985, 56 AFTR 2d 85-5370, 85-1 USTC par.

---

[3]At the hearing, respondent also contended that petitioner had not exhausted administrative remedies as required under sec. 7430(b)(2). In his memorandum of authorities, respondent has conceded that petitioner did exhaust available administrative remedies.

9411); *Contini v. United States,* an unreported case (N.D. Cal. 1984, 55 AFTR 2d 85-419, 84-2 USTC par. 9969); *Eidson v. United States,* an unreported case (N.D. Ala. 1984, 53 AFTR 2d 84-841, 84-1 USTC par. 9182); *Brazil v. United States,* an unreported case (D. Ore. 1984, 54 AFTR 2d 84-5707, 84-2 USTC par. 9596). One circuit and several districts have held that fees and costs and the measure of the reasonableness of the Government's position under section 7430 extends to the administrative level. *Kaufman v. Egger,* 758 F.2d 1 (1st Cir. 1985); *Roggeman v. United States,* an unreported case (N.D. Ill. 1985, 56 AFTR 2d 85-5676, 85-2 USTC par. 9473); *Rosenbaum v. Internal Revenue Service,* 615 F. Supp. 23 (N.D. Ohio 1985); *Sharpe v. United States,* 607 F. Supp. 4 (E.D. Va. 1984); *Hallam v. Murphy,* 586 F. Supp. 1 (N.D. Ga. 1983); *Penner v. United States,* 584 F. Supp. 1582 (S.D. Fla. 1984).

Since this Court's holding in *Baker v. Commissioner, supra,* there has been a relatively equal split in the holdings of other courts. In Minnesota, however, two District Court opinions are adverse to petitioner and the Eighth Circuit has not yet addressed the issue. Petitioner contends that there is a trend among the courts, irrespective of their holdings, to look at the totality of circumstances surrounding the cases. Petitioner would include this Court's *Baker* opinion in this "trend," but we disagree with petitioner's observation in general and more specifically in connection with this Court's *Baker* holding. Although facts occurring prior to the petition may be discussed, they were in no way used to determine reasonableness in this Court's *Baker* opinion.

We, therefore, limit our inquiry concerning reasonableness of respondent's position to the post-petition period of this case.[4] The standards for reasonableness are to be based upon all the facts and circumstances surrounding the

---

[4]Although we do not look to pre-petition factors, the pre-petition circumstances of this case do not indicate that respondent was unreasonable. Petitioner could easily have avoided the need for a statutory notice and petition in this case. It appears that petitioner refused to extend the statute to force the issuance of a statutory notice to Murphy. Petitioner actively lobbied against the legislation (sec. 312) because of the financial disadvantage that would result. The legislation obviated the need for Murphy to pay about one-half million dollars to the foundation. We see petitioner more as an instigator of controversy with respondent, rather than a victim of an unreasonable position. It is likely that respondent would never have issued a statutory notice to petitioner, but for petitioner's failure or refusal to execute a waiver of the statute of limitations.

litigation (post-petition), and the fact that the Government eventually loses or concedes is not necessarily determinative. *Broad Ave. Laundry & Tailoring v. United States*, 693 F.2d 1387, 1391-1392 (Fed. Cir. 1982); *Baker v. Commissioner*, 83 T.C. at 828-829.

Our determination as to whether respondent acted reasonably in this case must, of necessity, focus upon two factors: (1) Whether respondent can issue a statutory notice of deficiency to a "foundation manager," without first issuing one to the "self-dealer;" and (2) once the notice was issued, whether respondent's handling of the case to its conclusion was reasonable. Essentially, we consider the basis for respondent's legal position and the manner in which the position was maintained.

Respondent, following petitioner's refusal to extend the statute of limitation on assessment, on May 9, 1984, issued a statutory notice to petitioner and also sent a 30-day letter to Murphy (the "self-dealer") during May 1984.[5] The legislation became law on July 18, 1984, which retroactively eliminated the incidence of section 4941 liability on Murphy and petitioner in connection with the transaction in question. Respondent's issuance of a statutory notice where a taxpayer refuses to extend the statutory period for assessment does not, per se, render the notice arbitrary or invalid. *Chaum v. Commissioner*, 69 T.C. 156, 161 (1977); *Luhring v. Glotzbach*, 304 F.2d 560, 565 (4th Cir. 1962). We must in this case evaluate the legal position or basis for respondent's determination. Petitioner contends that respondent may not determine a tax under section 4941(a)(2) or 4941(b)(2) without first determining a tax under section 4941(a)(1) and 4941(b)(1), respectively. Petitioner points to the use of the phrase "in which a tax [or additional tax] is imposed by paragraph (1)" as a prerequisite to the "imposition" of a tax under section 4941(a)(2) and 4941(b)(2). Petitioner argues that the word "imposed" means determined by means of a statutory notice. Respondent argues that the word "imposed" does not mean that respondent must take affirmative steps to determine, assess, or collect

---

[5]Respondent also could have chosen to send a statutory notice to Murphy, but that would have been either a meaningless act considering the pending legislation or would not have facilitated Murphy's administrative conference and appeal procedures. Presumably, Murphy had agreed to extend the statute of limitations on assessment.

the tax. We agree with respondent. The use of "imposed" in section 4941 is no different from its use in section 3 or 11. The imposition of the tax by Congress merely establishes its existence thereby facilitating its determination, assessment, collection, overpayment, etc., within the context of the internal revenue laws. Accordingly, in that context, it is not necessary that the tax under section 4941(a)(1) and 4941(b)(1) be determined or enforced, but only that it has been congressionally imposed and it may be determined or enforced by respondent.

Petitioner also complains that she is without means to correct the act of self-dealing by payment of the approximate one-half million dollars of interest attributable to the difference between the debentures and the prime rate of interest. Petitioner's complaint ignores respondent's answer, filed October 17, 1984, which alleges—

under the provisions of section 312 Murphy Motor Freight Line, Inc. is not liable for excise taxes under I.R.C. §4941(a)(1) and (b)(1) with respect to the transaction in issue and therefore no excise tax under I.R.C. §4941(a)(2) or (b)(2) can be imposed on the petitioner as a foundation manager with respect to such transaction.

In spite of this concession and respondent's execution of a stipulation of settled issues reflecting no deficiencies or overpayment, petitioner continues to seek a result which is no longer statutorily possible or necessary.

At each step of the litigation, respondent did not take an unreasonable position and was generally on the defensive regarding petitioner's attempts to force Murphy to take "corrective action" or instigate the momentum for respondent to be a catalyst in the corrective action by issuing a statutory notice to Murphy. Following July 18, 1984, the issuance of a statutory notice to Murphy would have been a useless act. Further, the issuance of a statutory notice to petitioner was merely a protective act on respondent's part to protect himself from the running of the statute of limitations on assessment should the legislation have failed to be enacted into law.

Under the circumstances of this case, we find that petitioner has "substantially prevailed" but that respondent's position in the civil proceeding was reasonable and

that petitioner is not entitled to costs or fees under section 7430.

To reflect the foregoing,

*An appropriate order and decision will be entered.*

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.