JERRY M. BLACK AND MARY ALICE BLACK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Black v. Commissioner
Docket No. 17898-85.
United States Tax Court
T.C. Memo 1987-239; 1987 Tax Ct. Memo LEXIS 241; 53 T.C.M. (CCH) 805; T.C.M. (RIA) 87239; May 11, 1987. Timothy M. Larason, for the petitioners. Osmun R. Latrobe, for the respondent. HAMBLEN
MEMORANDUM OPINION HAMBLEN, Judge: This matter is before the Court on petitioners' motion for litigation costs pursuant to Rule 231. [1]
The parties filed a stipulated decision disposing of all issues before the Court on June 12, 1986. Petitioners filed a motion for award of litigation costs on September 2, 1986, asserting the provisions of section 7430. Respondent was served with petitioners' motion on September 9, 1986. On the same date, the Court vacated the stipulated *243 decision and ordered respondent to respond to petitioners' motion within 60 days of the date of service. Respondent filed his response thereto on November 10, 1986. Thereafter, on December 22, 1986, petitioners filed a reply to respondent's response which incorporated information submitted by petitioners pursuant to Rule 232(d). Each of petitioners' legal residences was Oklahoma City, Oklahoma, at the time the petition herein was filed. Respondent issued the statutory notice of deficiency on March 13, 1985. Petitioners commenced their case in this Court by filing the petition herein on June 14, 1985. Rule 20(a). [2] Petitioners filed joint Federal income tax returns for the years at issue. Petitioners filed a joint 1982 Federal income tax return. Petitioners filed separate Federal income tax returns for the year 1983. Respondent determined deficiencies in petitioners' joint Federal income tax and additions thereto as follows: Section 6653(a)
Tax Year Ended
Increase in Tax
Addition to Tax
December 31, 1979
$5,413.00
$271.00
December 31, 1980
11,868.00
593.00
*244 The corresponding adjustments to income determined by respondent within the statutory notice of deficiency were as follows: Tax Year Ended
Adjustments to Income
December 31, 1979
December 31, 1980
Omitted Income [3]
$ 1,744.00
$10,650.00
Additional Income [4]
9,303.00
6,022.00
Partnership Loss
6,103.00
Total Adjustments
$11,047.00
$22,775.00
Respondent noted within the statutory notice of deficiency that the determinations therein are computed without taking into account any carryback claim of 1982 or 1983 net operating loss or investment tax credit and any tentative allowance attributable thereto. In their petition and petition as amended, petitioners assert that the entire *245 deficiencies as determined by respondent in the amounts of $5,413 and $11,868 and additions to tax thereto in the amounts of $271 and $593 for the respective years 1979 and 1980 are in dispute. Petitioners assert that petitioner Jerry M. Black ("Black") is entitled to deduct the amount of $15,583 as a distributive share of loss sustained by Independence Drilling Program ("IDP") during the year 1980. Black purchased a limited partnership interest in IDP during the year 1980. Respondent determined within the notice of deficiency that Black's distributive share of loss be limited to the basis amount of $9,480 and that the amount at risk within the meaning of section 465 be limited to such amount as of December 31, 1980. Consequently, respondent increased the income of Black for the year 1980 in the amount of $6,103. Petitioners assert the allowance of a deduction for net operating loss carrybacks from the year 1982 and 1983 in the respective amounts of $64,674 and $108,588. Petitioners also assert the allowance of unused investment tax credit carrybacks from the years 1982 and 1983 in the respective amounts of $9,730 and $977. In a related matter, respondent issued a statutory *246 notice of deficiency to Jerry M. Black Insurance Agency, Inc. ("Black Insurance"), on March 13, 1985, for fiscal years and March 31, 1980, and March 31, 1981. Respondent noted that the deficiencies therein are computed without taking into account carrybacks of net operating loss or investment tax credit and any tentative allowance attributable thereto for fiscal year end March 31, 1983. As to the deficiencies concerning Black Insurance, the parties filed a stipulated decision at calendar call on June 2, 1986, at Guthrie, Oklahoma. See Jerry M. Black Insurance Agency, Inc. v. Commissioner, docket No. 17897-85. Black Insurance is not a party subject to petitioners' motion herein for litigation costs pursuant to section 7430. IDP was formed during the year 1980. Black invested in a limited partnership interest during such year. Black contributed the amount of $9,000 in cash to IDP during the year 1980. Black executed, as part of his partnership contribution, an assumption agreement whereby Black agreed to assume a pro rata one unit share of IDP borrowings and loans in the amount of $24,000. [5] As collateral security for the contribution payment in full, Black executed a letter *247 of credit issued in favor of IDP in the amount of $24,000. Petitioners assert within their petition that Black properly included the amount of $24,000 assumed pursuant to the assumption agreement and secured pursuant to the letter of credit within his partnership basis of IDP pursuant to section 752 and that Black is at risk within the meaning of section 465 for such amount. Respondent determined *248 that Black was not entitled to include the amount of $24,000 assumed pursuant to the assumption agreement and secured pursuant to the letter of credit within his IDP partnership basis and that Black was not at risk within the meaning of section 465 for such amount. Petitioners participated in an appeals office conference at sometime prior to the commencement of the case. Respondent informed petitioners' counsel by correspondence dated February 4, 1986, as follows: It appears that the only significant issue, other than the issue of the carrybacks from 1982 and 1983, is the disallowance of a portion of the claimed partnership loss from the Independent Drilling Program. I have requested additional information on our office's current position with respect to the partnership issue and should be able to let you know shortly as to how we determine to proceed. With respect to the carrybacks, I have previously requested that the Service examine those years to determine the amounts properly allowable. * * * The parties held telephone conferences regarding settlement on the following dates: February 5, 1986 February 26, 1986 March 27, 1986 March 31, 1986 On April 28, 1986, the *249 parties held a telephone conference to prepare a 30-day pretrial report. Petitioners' counsel reviewed settlement documents on May 29, 1986. The stipulated decision filed by the parties reflects respondent's concession as to the net operating loss carrybacks from the years 1982 and 1983 in the respective amounts of $64,674 and $108,588. Respondent conceded the carrybacks of investment tax credit from the years 1982 and 1983. These tax attributes were not reflected within the statutory notice of deficiency. Respondent conceded the IDP partnership loss issue. Petitioners conceded the omitted income and additional income issues as determined by respondent for each year before the Court. Petitioners also conceded the negligence additions for each year in issue as determined by respondent. Petitioners seek an award of litigation costs as follows: Attorney fees
$1,170.00
Expenses
75.00
$1,245.00
Petitioners' counsel filed an affidavit in support of costs claimed in accordance with Rule 231(d). Such affidavit reveals that petitioners' counsel expended 17.6 hours totalling $1,570 of time charges in attorney fees. Petitioners' counsel determined that the *250 amount of $400 of such amount pertained to the preparation of the petition in the related statutory notice of deficiency issued to Black Insurance which is not subject to petitioners' motion herein. Consequently, petitioners seek an award of $1,170 of attorney fees. Pursuant to section 7430, the "prevailing party" in any civil proceeding brought by or against the United States in connection with the determination, collection, or refund of any tax, interest or penalty under the Internal Revenue Code may be awarded reasonable litigation costs. As a prerequisite to such an award, we must ascertain whether (1) petitioners exhausted the administrative remedies made available within the Internal Revenue Service as provided in section 7430(b)(2) and, if so, (2) whether petitioners satisfy the statutory definition within section 7430(c)(2) of the term "prevailing party". This second condition imposes on petitioners the burden of proving that respondent's litigating position was unreasonable. Because respondent concedes that petitioners exhausted the administrative remedies made available within *251 the Internal Revenue Service, we need determine only whether petitioners satisfy the definition of a "prevailing party" within section 7430(c)(2). The parties have addressed the reasonableness of respondent's position with consideration only to the IDP partnership loss issue for purposes of section 7430(c)(2)(A)(i). Respondent concedes in his response that petitioners substantially prevailed with respect to the IDP partnership loss issue as the sole, and thus the most significant, issue presented, within the meaning of section 7430(c)(2)(A)(ii)(II). [6]
*252 As above noted, petitioners bear the burden of proof as to whether the position of the United States was unreasonable. DeVenney v. Commissioner,85 T.C. 927, 928-930 (1985). The fact that respondent ultimately is unsuccessful at litigation or concedes the case is not necessarily determinative that such position was unreasonable. Wasie v. Commissioner,86 T.C. 962, 969 (1986), and cases cited therein. This Court and the courts of appeals of several circuits have previously determined that the award of costs under section 7430 is to be based on a determination of the reasonableness of respondent's position from the date the petition was filed. Ewing and Thomas, P.A. v. Heye,803 F.2d 613 (11th Cir. 1986); Baker v. Commissioner,787 F.2d 637 (D.C. Cir. 1986), affg. on this issue 83 T.C. 822, 827 (1984); United States v. Balanced Financial Management,769 F.2d 1440 (10th Cir. 1985); Minahan v. Commissioner, 88 T.C.     (March 5, 1987); Wasie v. Commissioner,86 T.C. at 967. *253 The Court of Appeals for the Tenth Circuit, to which this case may be appealed, has adopted such position. United States v. Balanced Financial Management,supra.Consequently, we apply the standard established by the Court of Appeals for the Tenth Circuit. See Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). [7] Petitioners submit that we should reconsider whether the reasonableness of respondent's position should extend to the prepetition actions of respondent. We decline. Furthermore, as we have previously observed, the Court of Appeals for the Tenth Circuit, to which this case may be appealed, has adopted the standard that the reasonableness of respondent's position is to be determined as of the date the petition was filed. United States v. Balanced Financial Management,supra; see Golsen v. Commissioner,supra.Consequently, we determine the reasonableness of respondent's position as of June 14, 1985, the date the petition was filed. *254 Respondent's position with reference to the IDP partnership basis issue, as evidenced within the statutory notice of deficiency and maintained until settlement, was that the letter of credit constituted a contingent obligation such that Black did not assume personal liability until such time, if ever, that the letter of credit is actually drawn upon. In this position, respondent relied upon the rationale of Chapman v. United States,527 F. Supp. 1053 (D. Minn. 1981). Accordingly, respondent concluded that Black's obligation to IDP was contingent such that the amount of $24,000 assumed pursuant to the assumption agreement and secured pursuant to the letter of credit was not includable within Black's IDP partnership basis under section 752 and that Black was not at risk for such amount under section 465. The dispute in Chapman arose out of a purchase of cattle feed. The cash basis taxpayers deducted the amount of $30,000 on their 1973 joint Federal income tax return. Such amount represented the total purchase agreement between taxpayer Loyal Chapman and the cattle company. Under the agreement Chapman purchased cattle and feed for the total agreement purchase *255 amount of $30,000. Taxpayer Loyal Chapman paid $15,000 of this amount in cash during the year 1973. The balance of the purchase price was due and payable when each cattle lot was sold and was to be subtracted from the proceeds of the sale of each lot prior to disbursing the balance of the proceeds, if any, to Loyal Chapman. To insure payment in the event the proceeds from the cattle sale failed to cover the amount owed to the cattle company for feed, Loyal Chapman gave the cattle company a promissory note for $15,000 and a secured letter of credit for the same amount on November 19, 1973. The cattle company never drew upon the letter of credit which expired on May 15, 1974. Taxpayer deducted the entire purchase agreement of $30,000 in the year 1973 and recognized income in the amount of $15,000 in the year 1974 when the letter of credit expired. In Chapman, the U.S. District Court for the District of Minnesota held that the letter of credit was analogous to a promissory note secured by collateral such that taxpayers merely promised to pay the expense and secured their payments with a letter of credit. Consequently, taxpayers were not entitled to deduct the amount of $15,000 *256 in the year 1973 regarding the letter of credit. 527 F. Supp. at 1055. Petitioners assert that the position of respondent was unreasonable in the determination that Black did not increase basis in the amount of $24,000 pursuant to section 752 and was not at risk within the meaning of section 465. Petitioners assert that respondent ignored the assumption agreement and letter of credit. Petitioners also contend that respondent ignored section 1.752-1(a)(2), Income Tax Regs., which provides that any increase in a partner's individual liabilities because of the assumption by him of partnership liabilities shall also be considered as a contribution of money by him to the partnership. Petitioners further submit that respondent ignored our opinion in Smith v. Commissioner,84 T.C. 889 (1985), affd. without published opinion 805 F.2d 1073 (D.C. Cir. 1986), which held that a partner who assumes ultimate liability of a partnership debt is entitled to an increase of basis under section 752. Our opinion in Smith was filed on May 20, 1985. Respondent issued the statutory notice of deficiency on March 13, 1985. The *257 petition herein was filed June 14, 1985. The petition does not refer to our then recent opinion in Smith. Respondent's answer was filed on July 29, 1985. Petitioners filed a motion for leave to file an amendment to petition on August 23, 1985, for the sole purpose to allege that respondent erroneously determined additions to tax for each year in issue pursuant to section 6653(a). Respondent filed no objection on September 16, 1985. Petitioners' amendment to petition was filed on September 27, 1985. The notice setting the case for trial on June 2, 1986, was issued on February 24, 1986. Respondent informed petitioners' counsel by correspondence dated February 4, 1986, that additional information had been requested regarding respondent's current position on the IDP partnership basis issue and that such information was to be forthcoming shortly. The parties held four telephone conferences regarding settlement between February 5, 1986, and March 31, 1986. We note that the carrybacks of net operating loss and investment tax credits from the years 1982 and 1983 not incorporated within the statutory notice of deficiency are reflected within the stipulated settlement as well as *258 the settlement of the IDP partnership loss issue. The record is not clear as to the extent settlement negotiation concerned such carrybacks or the treatment of the IDP partnership basis issue. In Smith, we held an "Assumption of Liability" agreement was effective to increase the taxpayer's liabilities for purposes of section 752(a) where the substance of taxpayer's assumption was that the partnership continued to be at risk as to the securing property and taxpayer was ultimately liable to the partnership as an indemnitor or under an obligation to make contributions to capital for any loss sustained in the event of default. 84 T.C. at 907. We filed our opinion in Pritchett v. Commissioner,85 T.C. 580 (1985) (Court reviewed), on October 24, 1985. In Pritchett, we determined that for purposes of section 465 limited partners in similar oil and gas drilling partnerships were at risk only to the extent of capital contributions of cash and not at risk to the extent such limited partners agreed to make future additional capital contributions if called at the discretion of the general partners to satisfy 15 year recourse notes executed by the *259 partnerships in favor of a drilling company. On March 12, 1986, we filed our opinion in Abramson v. Commissioner,86 T.C. 360 (1986) (Court reviewed), where we held that a limited partner's pro rata guarantee of a partnership's nonrecourse obligation entitled such limited partner to include pro rata portion of such obligation in his partnership basis pursuant to section 752 and further held that such limited partner was at risk within the meaning of section 465 for the pro rata guarantee of the partnership's nonrecourse obligation. We distinguished the application of section 465 from the facts presented in Pritchett. 86 T.C. at 376. We find that the legal position of respondent in the civil proceeding was reasonable as measured from the date the petition was filed. The petition herein was filed on June 14, 1985. Our opinion in Smith was filed on May 20, 1985. The application of section 752 and section 465 as applied to the instant facts was further developed in the two Court reviewed cases of Pritchett and Abramson, both of which were filed while this case was in docketed status. Respondent's strategy to concede the IDP partnership *260 basis was certainly influenced by our opinions in Smith,Pritchett and Abramson. Until those cases were released and respondent had a reasonable opportunity to review them, we find that respondent's initial reliance on Chapman was reasonable. Furthermore, respondent's willingness to settle the IDP partnership basis issue while the case was in docketed status given the recent developments was without question reasonable. Our opinion in Abramson issued on March 12, 1986, coincided with the period during which the parties held telephone conferences which ultimately provided respondent's concession regarding the IDP partnership basis issue. We find the position of respondent to be reasonable as measured from the date the petition was filed. Petitioners have not satisfied the definition of a prevailing party within the meaning of section 7430(c)(2)(A)(i). In our recent opinion of Minahan, we determined that respondent's position therein was unreasonable where respondent disregarded case authorities and regulations in the valuation determination that the subject transfers of common stock sold to separate trusts under the agreements then at issue embodied a control *261 premium. Minahan v. Commissioner,supra, slip opinion at p. 12, and citations therein. Respondent in Minahan merely relied on the assertion that valuation is a factual inquiry. Respondent therein neither cited legal authority nor presented any argument to indicate that the valuation theory therein was reasonable from a legal perspective. We stated in Minahan that: [W]e emphasize that we find respondent's position unreasonable only because, by espousing a family attribution approach, he seeks to repudiate a well-established line of cases of long and reputable ancestry, going back as far as 1940. * * * [Slip opinion at p. 14.] We also noted in Minahan that, in that context, we need not confront the question of when an attempt to create a conflict among the circuits might be reasonable. Slip opinion at p. 15. Such is not the circumstance in the instant case. Simply stated, petitioners' motion for an award of litigation costs in the instant case approximates the unreasonable. We have held that petitioners are not entitled to an award of litigation costs. Consequently, we need not address the reasonableness of the litigation costs incurred and allocated *262 to the instant case within petitioners' motion. Based on the foregoing, An appropriate order and decision will be entered.
Footnotes
1. All rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954, as amended.↩
2. As this case was commenced prior to Dec. 31, 1985, the provisions of the Tax Reform Act of 1986 which modify sec. 7430↩ are not applicable. See sec. 1551, Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 1752.
3. ↩
Omitted Income
December 31, 1979
December 31, 1980
Car Allowance
$1,680.00
$2,400.00
Interest
64.00
Salary
5,000.00
Commissions
3,250.00
$1,744.00
$10,650.00
4. ↩
Additional Income
December 31, 1979
December 31, 1980
Federal Tax Withholding
$1,343.00
FICA Taxes
1,471.00
Credit Union Insurance &
Miscellaneous Benefits
$9,303.00
3,208.00
$9,303.00
$6,022.00
5. Agreement
Section 1. Assumption. The undersigned unconditionally agrees to assume and hereby assumes the undersigned's share of any and all indebtedness, liabilities or obligations of the Program to the Bank arising out of the Program borrowings and loans referred to in the Program Agreement at § 3.02(d) as the "Letter of Credit Loan" and any "Successor Loan" * * *. * * * Section 3. Limitations. Notwithstanding anything to the contrary the liability of the undersigned hereunder shall in no event exceed $24,000 per Unit subscribed. * * * * * * Section 6. Security. As collateral security for the payment in full of the undersigned's Program Subscription, the undersigned has caused the Letter of Credit to be issued in favor of the Program. * * * * * *↩
6. However, our review of the petition indicates that the entire amount of each item of the deficiency determined by respondent remained in issue at the time the case was commenced. Respondent determined within the statutory notice of deficiency that petitioners failed to recognize the following income notwithstanding the IDP partnership loss issue: Adjustment to Income
1979
1980
Omitted Income
$1,744.00
$10,650.00
Additional Income
9,303.00
6,022.00
Petitioners conceded the receipt of such income within the stipulated decision. Petitioners assert the allowance of certain net operating loss carrybacks and investment tax credit carrybacks from the 1982 and 1983 taxable years within their petition. Consequently, we dispute the assertion of the parties that the IDP partnership loss issue was the sole issue presented for decision to this Court as indicated within the petition. See Moran v. Commissioner, 88 T.C.     (April 1, 1987). Based on our determinations herein, however, we need not address the sec. 7430(c)(2)(A)(ii)↩ prong of the prevailing party standard.
7. We recognize that other courts have indicated that fees and costs and the measure of the reasonableness of respondent's position extends to the administrative level. Powell v. Commissioner,791 F.2d 385 (5th Cir. 1986), revg. a Memorandum Opinion of this Court; Kaufman v. Egger,758 F.2d 1↩ (1st Cir. 1985).