JOHN AND KAROL CAPARASO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Caparaso v. Commissioner
Docket No. 11709-91
United States Tax Court
T.C. Memo 1993-255; 1993 Tax Ct. Memo LEXIS 258; 65 T.C.M. (CCH) 2930; T.C.M. (RIA) 93255; June 9, 1993, Filed *258 John Caparaso, pro se. For respondent: Carmino J. Santaniello. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: This case is before the Court on petitioners' motion filed pursuant to Rule 231 [1] for an award under section 7430 of reasonable administrative and litigation costs. [2]
FINDINGS OF FACT Petitioners resided in Fort Wayne, Indiana, at the time they filed the petition in this case. Respondent began an examination of petitioners' returns for tax years 1982 and 1983 sometime in 1985 and thereafter expanded the examination to include tax years 1984 and 1985. Respondent used an indirect method -- the source and application of funds method (hereinafter sometimes referred to as the cash *259 expenditures method) -- in determining petitioners' correct tax liability for each of those years. [3]
Petitioner [4] was not particularly cooperative with the examining agent who audited tax years 1982 through 1985. [5] For example, various bank records, which were critical to completion of the audit under the indirect method, had to be subpoenaed by the Internal Revenue Service (Service) for tax years 1982 and 1983, since petitioner refused to obtain the records himself. It took a long period of time for the Service to obtain these bank records, since they related to years for which the information was stored by the banks at off-site storage locations and *260 since a few of the banks had been acquired by another bank, making it difficult to locate the records.
Both petitioners and their authorized representative, Ken Wolfe, were given ample time to respond to the proposed deficiencies prior to the case being sent forward as unagreed. The examining agent met with Mr. Wolfe approximately six times during 1989 and 1990 regarding the audit of tax years 1982 through 1985 and kept him apprised of the status of the case throughout the course of the audit. A Service training text on the source and application of funds method was provided to Mr. Wolfe. The examining agent also explained the method to Mr. Wolfe and discussed with him the understatements of petitioners' income that resulted from its application. *261 As a result of her examination, respondent proposed deficiencies in, and additions to, petitioners' income tax for each of the years 1982 through 1985. Petitioner sent numerous letters to management personnel of the Service and local political leaders contesting the results of respondent's examination and stating that he had information which had not been considered by the Service. On October 25, 1990, a certified letter was sent to petitioners by the agent responsible for auditing their tax years 1982 through 1985, in which a meeting was scheduled at the Service's office in Fort Wayne, Indiana, on November 14, 1990 (November 14 meeting). The purpose of the meeting was to review the proposed deficiencies in, and additions to, petitioners' income tax for those years and any additional information which petitioners wished to submit. Initially, petitioner declined to meet on that date. However, after being apprised by the examining agent of the seriousness of the matter and after petitioners' imposing certain conditions on the meeting, petitioner did attend the November 14 meeting. At that meeting, the cash expenditures method was reviewed "line by line" with petitioner, and, "after *262 taking oral testimony from" him, minor adjustments were made. Contrary to petitioner's stated intentions in his earlier correspondence to various Service personnel and local political leaders, he did not submit any other new information to the Service at the November 14 meeting. Consequently, petitioner was advised at that meeting that the case was being closed out again by respondent. On March 11, 1991, respondent issued a notice of deficiency to petitioners in which the following deficiencies in, and additions to, their income tax were determined: Additions to Tax
Section
Section
Section
Section
Year
Deficiency
6653(a)(1)
6653(a)(2)
6661
6651(a)(1)
1982
$ 1,554
$  77.70
*
$   --    $   388.50
1983
2,483
124.15
*
--    620.75
1984
7,955
397.75
*
1,988.75
1,988.75
1985
2,668
133.40
*
--    667.00
The above deficiencies resulted, inter alia, from respondent's determination that, based on the cash expenditures *263 method, petitioners had unreported income for the years 1982 through 1985 in the amounts of $ 35,375, $ 25,345, $ 91,963, and $ 18,365, respectively. On June 10, 1991, petitioners timely filed a petition with the Court in which they disputed all of the deficiencies in, and additions to, income tax set forth in the notice of deficiency and asserted that respondent's calculations were approximations and guesses, arrived at by inaccurate methods. Respondent filed her answer on August 1, 1991. Since petitioners had designated Hartford, Connecticut, as the place of trial, on August 28, 1991, respondent's legal file was transferred from district counsel, Indianapolis, to district counsel, Hartford, Connecticut. On September 4, 1991, the case was assigned to an attorney in the Hartford district counsel office (respondent's counsel). Petitioners' tax years 1982 through 1985 had not previously been considered by any of respondent's appeals offices. On September 6, 1991, respondent's counsel transmitted the administrative files relating to those tax years to the Service's East Hartford Appeals Office (Hartford Appeals Office) for consideration. On October 12, 1991, the case was assigned *264 to an appeals officer in that office (appeals officer). In an attempt to settle the case, on October 22, 1991, the appeals officer sent a letter to petitioners in which he scheduled a meeting on December 4, 1991. On October 27, 1991, petitioner telephoned the appeals officer and indicated that he was in agreement with nearly all of the adjustments proposed in the notice of deficiency. However, petitioner objected to a personal living expense statement for 1984 which he claimed was too high. In addition, petitioner informed the appeals officer that he had net operating losses from subsequent years which could be used as carrybacks to extinguish nearly all of the tax liabilities proposed for petitioners for the years 1982 through 1985. Petitioner suggested to the appeals officer that the carryback of net operating losses could dispose of the entire case on an agreed basis. Petitioner also told the appeals officer that he did not think that it would be necessary to have a meeting on December 4, 1991, since petitioner believed the matter could be handled by correspondence. The appeals officer informed petitioner that if, in fact, the case could be resolved simply by a mechanical *265 application of net operating loss carrybacks, he would agree that no meeting would be necessary. Between October 31, 1991, and November 12, 1991, the appeals officer attempted to locate the returns for the years for which petitioners claimed to have net operating losses. After some difficulty in locating those returns, the appeals officer finally received them on November 26, 1991. Thereafter, the appeals officer called petitioner to advise him of the status of the case. He also informed petitioner that a computation of allowable net operating losses would be made and that such allowable losses would be carried back to the appropriate tax year or years. The appeals officer further told petitioner that he would send him a proposed decision document along with the computation of the net operating loss carrybacks, which document was to be executed by petitioners and returned to the appeals officer. Petitioner raised no objections or other issues with the appeals officer upon being advised of the foregoing. On December 17, 1991, the appeals officer mailed the computations and proposed decision document to petitioners. The proposed decision document reflected the fact that, based *266 on return information, petitioners had net operating losses for 1987 and 1988, but not for 1986 and 1989, as claimed by petitioner. On or about January 2, 1992, respondent's counsel informed the appeals officer that the case had been calendared for trial at the Court's trial session commencing on May 18, 1992, in Hartford, Connecticut. The appeals officer also received a letter from petitioner on January 2, 1992, which indicated that he disagreed with the computation the appeals officer sent him because the remaining deficiencies were "still too high". On the same day, the appeals officer had a telephone conversation with petitioner (January 2 telephone conversation) in which petitioner indicated that he agreed with the computation for tax years 1982, 1983, and 1985, but that the 1984 deficiency was based on a personal living expense statement that inflated unreported income. Petitioner further indicated that he would have to address this point, since the net operating losses did not extinguish all of the tax liability for that year. The 1987 net operating loss that was carried back to 1984 by the appeals officer did extinguish most of petitioners' regular tax liability. However, *267 it did not eliminate petitioner's self-employment tax liability which remained as the 1984 understatement of tax. During the January 2 telephone conversation, petitioner requested a copy of his 1984 return, which the appeals officer sent him on January 13, 1992. The appeals officer further explained to petitioner during that telephone call what he would need to verify the actual amount of petitioners' personal living expenses for 1984. Petitioner offered to send a tally of his check register for personal items. The appeals officer indicated that he would review the tally and, if reasonable, would allow it to reduce petitioners' 1984 income. On January 27, 1992, petitioner telephoned the appeals officer to advise him that the revised 1984 personal living expense statement would be sent in a few days. During that conversation, the appeals officer and petitioner discussed how an allowance of the revised figure for 1984 personal living expenses should wrap up the case. In addition, the appeals officer told petitioner that the proposed penalties should be sustained because of the poor records which petitioner acknowledged he had maintained. Petitioner agreed during the January *268 27, 1992 telephone call that what was discussed during that call should complete consideration of his case. On January 30, 1992, the appeals officer received from petitioner the 1984 information for personal living expenses, which totaled $ 18,000 and which the appeals officer believed was acceptable to resolve that tax year. On February 3, 1992, the appeals officer sent a revised computation to petitioners, along with a proposed decision document. On February 18, 1992, petitioner telephoned the appeals officer to inform him that he would not accept the settlement because "he owes no money for any tax year". The appeals officer informed petitioner during this telephone call that there was no documentary evidence to prove this claim. The appeals officer also informed petitioner that he had led the appeals officer to believe that there were no other items of disagreement with the cash expenditures method and that the appeals officer had basically allowed those items which petitioner had asked him to investigate. Petitioner's reply was that there were additional expenses that the auditing agent did not allow, whereupon a lengthy discussion occurred regarding the use of the cash *269 expenditures method. On February 24, 1992, the appeals officer informed respondent's counsel of the status of the case. Respondent's counsel indicated to the appeals officer that it appeared petitioner was not willing to settle and recommended that the case be forwarded to him for trial preparation. On February 28, 1992, the appeals officer prepared the case for trial preparation and informed petitioner of the action he was taking. On March 4, 1992, the appeals officer's recommendation for trial preparation was approved, and the administrative files were sent from the Hartford Appeals Office to respondent's counsel. After the appeals officer released the administrative files to respondent's counsel, he received two packages of computer printouts from petitioner reflecting alleged schedule C expenses that petitioner had claimed the examining agent did not allow. The appeals officer examined those printouts, but found them to be of no value in decreasing petitioners' tax liability. The printouts were forwarded by the appeals officer to respondent's counsel for association with the case file. During the period January 2, 1992, through March 4, 1992 (the date the case was formally *270 transferred by the Hartford Appeals Office to respondent's counsel), respondent's counsel stayed in regular contact with the appeals officer about the status of petitioners' case. During the entire time the appeals officer was considering the case for settlement purposes, petitioners did not contest any portion of respondent's source and application of funds method, verbally or otherwise, except for the living expenses for 1984. In fact, petitioner stated on numerous occasions to both the appeals officer and respondent's counsel that he was in substantial agreement with respondent's figures. Sometime shortly after March 4, 1992, respondent's counsel received from the appeals officer the voluminous computer printouts reflecting alleged additional schedule C expenses not originally claimed by petitioners, which petitioner sent to the appeals officer after he had released the administrative files to respondent's counsel and which the appeals officer then forwarded to respondent's counsel. These printouts consisted of statements of dates and amounts of certain expenses, unsupported by contemporaneous records or receipts. On March 4, 1992, respondent's counsel telephoned petitioner *271 and advised him that the case was no longer assigned to the appeals officer and that all future correspondence should be sent to respondent's counsel. During this telephone conversation, petitioner informed respondent's counsel that he would be sending him over the next several weeks about 7,000 documents which petitioner believed entitled him to approximately $ 250,000 of additional schedule C deductions for each of the years 1982 through 1984. It did not appear to respondent's counsel that petitioner understood the source and application of funds method of proof used in this case, as was evidenced by his submission of the computer printouts showing additional alleged schedule C expenses. Consequently, during the March 4, 1992 telephone call, and during several discussions with petitioner thereafter, respondent's counsel explained to him that, under respondent's source and application of funds method, production of previously unidentified expenditures would serve to increase the discrepancies between the source and application of funds for the years 1982 through 1984, thereby increasing the underreported amounts for those years. Respondent's counsel therefore suggested to petitioner *272 that he refrain from sending any further schedules of additional expenses and instead concentrate his efforts on either demonstrating previously unidentified sources of income or challenging the application of funds set forth in the notice of deficiency. At or about the time of the March 4, 1992 telephone conversation, petitioner told respondent's counsel that he was his "own worst enemy" when it came to proper recordkeeping. Despite the suggestions of respondent's counsel to the contrary, petitioners continued to send him computer printouts of alleged unclaimed schedule C deductions. When asked by respondent's counsel why these substantial expenses had not been claimed on the respective returns for the years in issue, petitioner answered that such expenses were intentionally omitted because of the presence of a loss on each such return. During a March 24, 1992 telephone call with petitioner and the Court, respondent's counsel again suggested to petitioner that he concentrate his efforts on locating additional sources of funds upon which adjustments to respondent's source and application of funds computation could be made. During March 26 and 27, 1992 telephone conversations *273 between petitioner and respondent's counsel, petitioner appeared, for the first time, to understand the source and application of funds method of proof in this case. During those telephone conversations, petitioner and respondent's counsel discussed the types of items which could be considered as sources of funds. It was during the March 27, 1992 telephone conversation with respondent's counsel that petitioner, for the first time since the audit of tax years 1982 through 1985 began, identified various sources of funds. Sometime after April 3, 1992, petitioner advised respondent's counsel that petitioner was unable to document the majority of the items he had identified on March 27, 1992, as sources of funds. Petitioner did, however, suggest the presence of several other substantial sources of funds, the majority of which consisted of cash received by petitioners as repayments of loans previously made to various friends, relatives, and business associates. Since none of the loans referred to by petitioner were documented, respondent's counsel agreed to accept for settlement purposes affidavits from the alleged debtors as verification for such loans. During April 1992, petitioner *274 also identified an additional previously unknown source of funds attributable to the year 1984, namely, a $ 58,355 loan to petitioners from Summit Bank. During the two-week period immediately preceding the May 18, 1992 calendar call of the trial session, respondent's counsel received from petitioners several affidavits from individuals who made cash repayments to them during the years 1982 through 1984, as well as documentation of the $ 58,355 loan from Summit Bank. At no time during respondent's counsel's involvement with petitioners was it apparent to him that petitioners were represented by anyone. In fact, petitioner informed respondent's counsel on more than one occasion that he had been unable to afford any representation due to the unfavorable outcome to petitioners in Caparaso v. Commissioner, T.C. Memo. 1990-613. Based upon the affidavits and other limited documentation furnished by petitioners during that period, respondent's counsel prepared and forwarded to petitioners a stipulation of settled issues. A signed stipulation of settled issues (stipulation) was filed with the Court on May 18, 1992. The parties agreed in the stipulation *275 that petitioners (1) had unreported income for the years 1982 and 1983 in the amounts of $ 9,078 and $ 2,370, respectively, (2) had no unreported income for the year 1984, and (3) had unreported income for the year 1985 in the amount of $ 25,840, which would be entirely offset by a net operating loss carryback from 1988. The stipulation further provided that (1) the unreported income for the years 1982, 1983, and 1985 was subject to self-employment tax, (2) petitioners were liable for additions to tax for the years 1982, 1983, 1984, and 1985 under section 6653(a)(1) and (2) (negligence penalties) and under section 6651(a) (failure to file penalty), and (3) petitioners were not liable for an addition to tax for the year 1984 under section 6661 (substantial understatement penalty). The parties calculated the revised deficiencies in, and additions to, petitioners' income tax based on the stipulation and submitted a signed decision document to the Court on June 16, 1992. The decision document stated that no deficiencies and additions to tax were due except for an $ 87 deficiency (plus applicable additions to tax) for the year 1983. [6] On June 23, 1992, the Court entered a decision based *276 on the parties' stipulation, which was vacated and filed as a stipulation of settlement upon filing by petitioners of the pending motion for costs. Respondent timely filed an objection to petitioners' motion. OPINION Section 7430(a) authorizes an award to the prevailing party of reasonable administrative costs incurred in any administrative proceeding within the Service and of reasonable litigation costs incurred in any civil tax litigation. In order to qualify for such an award, petitioners must (1) satisfy the definition of a prevailing party in section 7430(c)(4), (2) not have unreasonably protracted either the administrative or the court proceeding, (3) show that the costs claimed are reasonable administrative or litigation costs within the meaning of *277 section 7430(c)(1) and (2), and (4) in the case of their claim for reasonable litigation costs, have exhausted the administrative remedies available to them. See sec. 7430(b) and (c). Petitioners have the burden of establishing all of the foregoing criteria in order to recover reasonable administrative costs and reasonable litigation costs. Rule 232(e); Minahan v. Commissioner, 88 T.C. 492, 497 (1987). To be considered a prevailing party within the meaning of section 7430(c)(4), petitioners must show, inter alia, that the position of the United States in the proceeding was not substantially justified. Sec. 7430(c)(4)(A)(i). With respect to a claim for reasonable administrative costs, the "position of the United States" means the position taken by the United States in any administrative proceeding to which section 7430 applies as of the earlier of (1) the date of the receipt by the taxpayer of the notice of decision of the Office of Appeals of the Service, or (2) the date of the notice of deficiency. Sec. 7430(c)(7)(B). Prior to the issuance of the notice of deficiency in the present case, the case had not been considered by any Service Appeals *278 Office, and therefore there was no notice of any decision of such an office sent to petitioners. Accordingly, for purposes of petitioners' claim for reasonable administrative costs, the "position of the United States" means the position taken by the Service in an administrative proceeding to which section 7430 applies as of March 11, 1991, the date of the notice of deficiency in this case. With respect to a claim for reasonable litigation costs, the "position of the United States" means the position taken by the United States in a judicial proceeding to which section 7430 applies. Sec. 7430(c)(7)(A). Thus, for purposes of section 7430(c)(7)(A), the "position of the United States" means the position taken by respondent in this case. This case was commenced by the filing of the petition on June 10, 1991. Therefore, the "position of the United States" for purposes of petitioners' claim for reasonable litigation costs means the position first taken by respondent in this case on or after June 10, 1991. The prevailing party in both administrative proceedings and judicial proceedings who seeks reasonable administrative and litigation costs must establish separately that the position *279 of the United States in each such proceeding was not substantially justified. Huffman v. Commissioner, 978 F.2d 1139, 1146 (9th Cir. 1992), affg. in part, revg. in part, and remanding T.C. Memo. 1991-144. The determination of whether that position was substantially justified in each of the proceedings depends upon whether it was reasonable. Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). See Heasley v. Commissioner, 967 F.2d 116, 120 (5th Cir. 1992), affg. in part, revg. in part, and remanding T.C. Memo. 1991-189. A determination of reasonableness must be based on all the facts and circumstances surrounding the proceeding in question. Sher v. Commissioner, 861 F.2d 131 (5th Cir. 1988), affg. 89 T.C. 79 (1987); Wasie v. Commissioner, 86 T.C. 962, 968-969 (1986); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). Thus, in meeting their burden of demonstrating *280 that the position of the United States was not substantially justified, petitioners must show that, as of the time period applicable under section 7430(c)(7) in respect of each of the proceedings, legal precedent did not substantially support that position, given the facts available to respondent. Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 688 (1990); DeVenney v. Commissioner, supra at 930. In deciding whether petitioners have met their burden, we will examine the basis for respondent's position and the manner in which the position was maintained. Waise v. Commissioner, supra at 969. In assessing respondent's position in each of the proceedings, we may consider, inter alia, whether respondent used the costs and expenses of litigation to extract unjustified concessions from petitioners, whether respondent pursued litigation to harass or embarrass petitioners, or whether respondent's pursuit of the present litigation was politically motivated. Rutana v. Commissioner, 88 T.C. 1329, 1333 (1987); DeVenney v. Commissioner, supra at 930. *281 The fact that respondent conceded the case is not sufficient to establish that her position is unreasonable. Sokol v. Commissioner, 92 T.C. 760, 767 (1989). Respondent's position on the date the notice of deficiency was issued and on the date petitioners filed the petition and thereafter until sometime in early May 1992 was that petitioners had understated their income for each of the years 1982 through 1985 and that they had offered no proof to refute this determination. In taking this position, respondent relied on the cash expenditures method. Use of this method has been authorized by the Supreme Court. United States v. Johnson, 319 U.S. 503 (1943). We find respondent's use of the cash expenditures method to be reasonable. [7] We will now determine whether respondent applied the method in a reasonable manner. *282 The cash expenditures method is based upon the assumption that the amount by which a taxpayer's cash expenditures during a taxable period exceed his known sources of income for that period is taxable income unless the taxpayer can show that his expenditures were made from some nontaxable sources of income. DeVenney v. Commissioner, supra at 930. A proposed deficiency determined by use of the cash expenditures method generally is presumptively correct, and the burden of proof is on the taxpayer to demonstrate otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); DeVenney v. Commissioner, supra at 930-931. In order to meet their burden, petitioners must demonstrate either that someone else made the expenditures or that the funds used were obtained from nontaxable sources such as loans, gifts, inheritances, or assets on hand at the beginning of the taxable period. DeVenney v. Commissioner, supra at 931. Where respondent makes a determination based upon the cash expenditures method, the reasonableness of respondent's legal position turns *283 upon respondent's satisfying certain safeguards enumerated by the Supreme Court in Holland v. United States, 348 U.S. 121 (1954), in light of the facts and circumstances known to respondent at the time respondent issued the notice of deficiency and at the time petitioners filed their petition herein and thereafter. DeVenney v. Commissioner, supra at 931. The safeguards enumerated by the Supreme Court in Holland v. United States, supra, are: (1) Respondent must track down relevant leads furnished by the taxpayer which might show alternative sources of nontaxable income, provided that such leads are reasonably susceptible to being checked; and (2) respondent must give proof of a likely source of taxable income. With respect to the first safeguard, at the time the notice of deficiency was issued to petitioners, at the time the petition was filed, and at all times subsequent thereto until late March 1992, petitioners had not furnished respondent with any relevant leads which might show that expenditures were made by someone other than petitioners or that the funds used were obtained *284 from nontaxable sources. For the first time in late March 1992, petitioner identified various sources of alleged nontaxable funds. However, in early April 1992, petitioner informed respondent that he was unable to document the majority of the previously identified alleged nontaxable sources of funds. Nevertheless, he suggested the presence of several other substantial sources of nontaxable funds, the majority of which consisted of cash received by petitioners as repayments of loans previously made to various friends, relatives, and business associates. Since none of the loans referred to by petitioner was properly documented, respondent agreed to accept as verification for such sources affidavits from the alleged debtors for purposes of settling this case. It was not until the two-week period immediately preceding the May 18, 1992 calendar call that respondent received from petitioners several affidavits from individuals who made cash repayments to petitioners during the years 1982 through 1984. Petitioner also identified during April 1992 and documented during the two-week period prior to trial a certain loan from a bank, which accounted for an additional, previously unknown *285 source of nontaxable funds for the year 1984 and which respondent agreed to accept as a nontaxable source of petitioners' funds. The existence of the alleged loan repayments to petitioners and the nontaxable loan to petitioners was exclusively within petitioners' knowledge. Until that information was shared with respondent, respondent had no leads to investigate. Thus, the first safeguard of Holland v. United States, supra, is satisfied. The second safeguard required by Holland has also been met. The notice of deficiency reflects interest income to petitioners for the years 1982, 1984, and 1985, as well as substantial asset sales for 1982, 1983, and 1984. A letter to the Court which purports to be an affidavit and which was submitted as part of petitioners' motion for costs indicates that petitioners had, inter alia, a number of investment properties, rental properties, a real estate company, and a property management company. Petitioners have stipulated that they understated their income from taxable sources for each of the years 1982, 1983, and 1985, and that the understated income for those years is subject to self-employment tax. *286 Thus, there is ample evidence supporting the inference that petitioners' cash expenditures were attributable to currently taxable income. On the basis of the record in this case, we conclude that respondent's position and the manner in which it was maintained as of the time applicable under section 7430(c)(7) was reasonable in light of the facts and circumstances known to respondent. Respondent took reasonable means to determine and verify petitioners' correct income tax liability for each of the years 1982 through 1985. Although respondent ultimately conceded many of the issues raised in the notice of deficiency, she was not able to do so without information from petitioner.[8] Respondent was reasonable in conceding that petitioners had certain nontaxable sources only upon proper verification of their claim. Respondent's refusal to concede an issue until provided with adequate proof supporting petitioners' claim is not an unreasonable position by respondent. Harrison v. Commissioner, 854 F.2d 263, 265 (7th Cir. 1988), affg. T.C. Memo. 1987-52. Once respondent received the requisite proof for the alleged loan repayments *287 to petitioners and the bank loan to petitioners during the two-week period immediately preceding the scheduled trial in this case, respondent conceded that such items were nontaxable sources. This was a reasonable position by respondent. It is also noteworthy that, in the stipulation of settled issues filed in this case, petitioners agreed that they are liable for the additions to tax for each of the years 1982 through 1985 under section 6653(a)(1) and (2) (negligence penalties) and under section 6651(a) (failure to file penalty). Although the calculation of the actual additions to tax showed zero dollars of such additions due from petitioners for 1982, 1984, and 1985, such additions are based upon the amount of tax due. That no additions are due for years other than 1983 does not detract from the fact that petitioners conceded that they acted negligently, in disregard of rules or *288 regulations, and/or without reasonable cause with respect to tax years 1982 through 1985. Petitioners have not established that, as of the applicable time period under section 7430(c)(7), respondent's position in either the administrative proceeding within the Service or the proceedings in this Court was unreasonable and therefore not substantially justified. Consequently, petitioners cannot qualify as a "prevailing party" as defined in section 7430(c)(4). [9] Accordingly, petitioners are not entitled to reasonable administrative and litigation costs. To reflect the foregoing, An appropriate order and decision will be entered. Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code.↩
2. Based on our review of petitioners' motion and the attachments thereto, we shall treat the motion as a motion for both administrative and litigation costs.↩
3. Initially, the bank deposits method, another indirect method of analysis, was utilized along with the source and application of funds method in auditing petitioners' tax years 1982 and 1983. However, because certain totals could not be reconciled under the bank deposits method, the examining agent decided to use only the source and application of funds method.↩
4. References to petitioner in the singular are to John Caparaso.↩
5. Nor was petitioner cooperative with respect to the audit of tax years 1980 and 1981 which were before this Court in Caparaso v. Commissioner, T.C. Memo. 1990-613↩.
*. 50 percent of the interest due on the deficiency↩
6. According to respondent's memorandum in support of her opposition to petitioners' motion, while the stipulation reflected unreported income for the years 1982 and 1983, all but $ 87 of the deficiency for the year 1983 was eliminated due to income averaging.↩
7. Use of this method is particularly appropriate where, as here, the taxpayer did not keep adequate books and records. In the present case, according to affidavits submitted by respondent, petitioner acknowledged that he kept poor records and that he was his "own worst enemy" when it came to proper recordkeeping.↩
8. We note that taxable income was eliminated for tax year 1985 in part due to the carryback from 1988 of a net operating loss.↩
9. Thus, we need not address the issues of whether the costs claimed by petitioners are reasonable administrative costs or reasonable litigation costs under sec. 7430(c)(1) or whether petitioners unreasonably protracted any portion of each proceeding in this case, as proscribed by sec. 7430(b)(4).↩