ESTATE OF RALPH F. SELL, JR. and PATRICIA M. SELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Sell v. Commissioner
Docket No. 21566-89
United States Tax Court
T.C. Memo 1993-325; 1993 Tax Ct. Memo LEXIS 329; 66 T.C.M. (CCH) 185; July 22, 1993, Filed *329 For petitioners: Robert G. Nath and John P. Dedon. For respondent: Lindsey D. Stellwagen, John F. Dean, and George E. Bowden. PARKER
PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Petitioners have filed a Motion for Litigation and Administrative Costs pursuant to section 7430 and Rule 231. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the relevant years, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issue for decision is whether petitioners have established that they were the "prevailing party" within the meaning of section 7430(c)(4)(A)(i). We conclude that they have not so established. FINDINGS OF FACT [1]
*330 The full findings of facts underlying the substantive dispute between the parties herein can be found in this Court's opinion, T.C. Memo. 1992-430, and will not be repeated here. We will repeat the facts necessary to clarify the following discussion. Petitioner Ralph F. Sell, Jr. (petitioner), and his wife Patricia M. Sell (Mrs. Sell) (collectively known as petitioners), filed joint Federal income tax returns for the taxable years 1979 through 1982. Some time in the spring of 1987, the Internal Revenue Service (IRS) began an examination of the Federal income tax returns of the individual petitioners and their closely held corporation, Sell & Co., Inc. (the Corporation). As a result of that examination, the IRS proposed to adjust petitioners' individual returns for 1979, 1980, 1981, and 1982, alleging that petitioner's withdrawals from the Corporation in the total amount of $ 965,248 constituted constructive dividends or "unexplained income". Adjustments to the Corporation's tax returns were determined as well. [2] In response to the IRS revenue agent's report issued on June 26, 1987, petitioners filed a protest on September 14, 1987, contesting the *331 amounts of the withdrawals, asserting that the withdrawals were loans, and raising the innocent spouse issue with respect to Mrs. Sell. On November 5, 1987, petitioners filed a supplemental protest, making specific elaborations on the alleged constructive dividend items. A second supplemental protest was filed on August 4, 1988 (the Second Supplemental Protest). Petitioners contend that the Second Supplemental Protest is extremely detailed, regarding both the loan/dividend issue and the innocent spouse issue. [3] Petitioners state that they attempted to openly reveal to the IRS both their legal and factual bases for these two issues. That protest document also includes a settlement proposal in which petitioners requested that respondent concede the innocent spouse issue. The IRS did not respond to that proposal. Respondent issued a statutory *332 notice of deficiency on June 7, 1989. In the statutory notice of deficiency, respondent determined deficiencies in the individual petitioners' Federal income tax and additions to tax as follows: Additions to Tax Sec.
Sec.
Sec. Year
Deficiency
6651
6653(a) or (a)(1)
6661 1979
$  92,220
--  $  4,747
--  1980
327,657
$ 20,231
20,819
--  1981
73,910
--   * 3,738
--  1982
63,812
--   * 3,302
$ 16,510
* plus 50% of the interest on the deficiency pursuant to section 6653(a)(2).
*333 On September 1, 1989, petitioners timely filed a petition with this Court. In their petition, petitioners maintained that respondent had erred in determining that petitioners had received additional income or constructive dividends in the years at issue. Petitioners asserted that the withdrawals were bona fide loans. Alternatively, they argued that, even if the withdrawals were dividends, respondent had failed to credit petitioner with repayments made by him to the Corporation. Petitioners also asserted that Mrs. Sell qualified as an innocent spouse pursuant to section 6013(e). The first contact between respondent's counsel, Kristine A. Roth (Roth), and petitioners' counsel, Robert G. Nath (Nath),occurred on August 10, 1990, in a telephone conversation. In that conversation, Roth and Nath discussed the likelihood of the case proceeding to trial and expressed their willingness to consider settlement. Nath expressly stated that full concession of the innocent spouse issue would be a condition of settlement. On September 5, 1990, Nath called Roth to inform her that he had interviewed petitioner and had come to believe that the case would be going to trial. He again inquired *334 about settlement, reiterating that any settlement would have to include innocent spouse treatment for Mrs. Sell. On September 27, 1990, Nath and his partner, John P. Dedon (Dedon), met with Roth and her colleague, George Kelly (Kelly) (an attorney in the Office of Chief Counsel on temporary assignment in Roth's office), to discuss the case. No settlement proposals were made at that time. Counsel discussed petitioners' positions on the issues, including the innocent spouse issue. However, most of the discussion centered on petitioners' explanation of the method of record keeping employed by the Corporation, the debilitating effects of petitioner's alcoholism during the years at issue as a defense to the additions to tax, and petitioners' claim that many of the disputed constructive dividends were taken by their children without the knowledge of either petitioner. Roth requested a copy of the restitution agreement [4] executed by Mrs. Sell in 1986 and requested an explanation of the circumstances surrounding that agreement as well as the circumstances leading to Mrs. Sell's transferring title to properties in petitioners' individual names to the Corporation. [5] Petitioners' counsel *335 agreed to inquire with petitioners and provide a response. *336 Also, during the September 27th conference, Roth told petitioners' counsel that insistence on full concession of the innocent spouse issue would present a serious impediment to settlement. Nath told her that she had misunderstood his earlier statements concerning settlement and that concession of the innocent spouse issue would not be a condition of settlement. Nath also indicated that a formal offer would be forthcoming the following week. Roth indicated to Nath that, so far, she found petitioners' explanations implausible and that further details would be needed to support any concessions by respondent. On October 11, 1990, Roth and Kelly again met with petitioners' counsel. The purpose of the conference was to review the trial stipulations, exhibits, and other pretrial matters, and to discuss settlement. Petitioners' counsel submitted a written offer to settle the individual petitioners' case. This offer requested that the case be settled with petitioners' concession of approximately $ 290,000 of constructive dividends and respondent's grant of innocent spouse status to Mrs. Sell. A copy of the restitution agreement requested at the earlier meeting was also attached. *337 The details of this settlement proposal were discussed at length. Counsel for both parties also discussed the possibility of resolving the case by petitioners' recognizing income in 1990, the year when petitioners transferred their stock in the Corporation to the MacVeighs. See supra note 4. Roth requested a copy of the 1990 stock agreement as well as the financial statements of the Corporation, in order to evaluate the possibilities of a settlement involving years not before the Court. Roth recalls that, during the conferences on September 27th and October 11th, petitioners' counsel argued that, although Mrs. Sell had no reason to suspect anything was amiss and reasonably relied upon her husband to handle all financial affairs, if she should have known, and, thus, is liable for any portion of the deficiency, she should be excused from the negligence additions to tax due to her extremely trying circumstances resulting from her husband's alcoholism and incapacity. Roth responded that she viewed these arguments to be so inconsistent as to present a significant litigating hazard. She further pointed out that the standard of review was whether Mrs. Sell knew or had reason to *338 know of certain transactions, not whether she understood their tax consequences. Roth noted that petitioners had already acknowledged liability for some of the constructive dividends for the years at issue by agreeing to a partial assessment. Roth viewed Mrs. Sell's execution of the restitution agreement as an admission of her knowledge of petitioner's business activities. Petitioners' counsel asked whether any additional information could be provided on the issue that would persuade Roth to change her view of the litigating hazards. Roth asked that the inconsistencies in petitioners' argument be explained, but she did not request any specific documents as she thought at that time that all relevant documentary evidence was being produced in good faith. On October 12, 1990, Roth spoke with Dedon, who again promised that copies of the Corporation's financial statements and the 1990 stock agreement would be produced. On October 18, 1990, petitioners' counsel sent by facsimile a copy of an analysis prepared by Edward Huber (Huber), an accountant for the Corporation and for the individual petitioners, of the "loan account" maintained at the Corporation on behalf of petitioner. The *339 requested financial statements and stock agreement were not sent. On October 22, 1990, both parties submitted pre-trial memoranda to the Court. Counsel for the parties held another conference on October 25, 1990, in an attempt to narrow the areas of disagreement concerning the loan/constructive dividend issue. During that conference, Roth interviewed Huber for approximately 2 hours concerning the types of records maintained by the Corporation, the scope of his role in preparation of the tax returns in question, and the scope of his audit, if any, of the corporate records he used in preparing his loan account analysis. At that time, Huber acknowledged that his loan account analysis was not an audit of the Corporation's records, that he had not attempted to reconcile the loan account with bank records, nor were adequate records available to do so, and that he had given full credence to the entries made on petitioner's ledger cards. At the conclusion of the conference, Roth requested specific documentation concerning bank loans obtained by petitioner. Petitioners' counsel provided those documents on October 29, 1990. On October 30, 1990, Roth sent to petitioners' counsel, by facsimile, *340 an initial draft of the first stipulation of facts for trial. She also discussed with Dedon the possibility of settlement. Dedon suggested that they further explore settlement for the individual petitioners extending through the year in which the stock transfer was made, 1990. Roth again requested the stock agreement and all related documents in order to consider structuring such a settlement. Petitioners' counsel never provided those documents. On November 2, 1990, Roth and Dedon spoke concerning their respectively proposed Stipulations of Facts. [6] In addition, Roth and Dedon briefly and heatedly discussed settlement, with Dedon again arguing that respondent should concede the innocent spouse issue. Roth reiterated that she remained willing to settle but that she could not accept a settlement that did not give appropriate weight to the previously identified litigating hazards that petitioners faced. She stated that petitioners had not presented any evidence to alter her assessment. *341 On November 7, 1990, in the late afternoon, Nath telephoned Roth to offer to settle the case by conceding that petitioner was liable for the full deficiencies and the additions to tax in return for a concession by respondent that Mrs. Sell was an innocent spouse. Nath and Roth discussed at length the merits of petitioners' innocent spouse position. Nath argued strenuously that there was limited likelihood of collection even if respondent were to prevail. He suggested that Roth speak with the revenue officer responsible for collection of the joint partial assessments already made against petitioners. Roth agreed to respond to the offer by the following morning. Later that day, at approximately 6:40 p.m., Roth left a voice mail message for Nath, rejecting his settlement offer and extending a counteroffer to settle by accepting petitioner's concession and conceding 70 percent as to Mrs. Sell. On November 8, 1990, Roth spoke with the revenue officer to whom petitioners' collection matters had been assigned. The revenue officer advised Roth that, in searching property records as part of his investigation, he had learned that a power of attorney had been executed in favor of Mrs. *342 Sell on July 28, 1980. See supra note 5. The revenue officer also had learned that Mrs. Sell had exercised that power of attorney, on July 17, 1984, to transfer petitioners' personal residence and vacation home to their daughter, in trust, and to transfer other properties from petitioners' individual names to the Corporation's name. See supra note 5. Although Roth had copies of the deeds transferring properties to the Corporation, she did not have copies of the power of attorney or of the deeds to the personal residence and the vacation home. These documents had not been provided, nor their existence disclosed, by petitioners' counsel. Roth viewed these documents as corroborating her view that Mrs. Sell was more actively involved in protecting her interests during the years at issue than petitioners had acknowledged. Roth further asserts that her November 8, 1990 discovery of the 1980 power of attorney and the deeds transferring properties tended to confirm her view of the merits of pursuing the case and to convince her that further negotiations on the innocent spouse issue would be futile. Roth proceeded to call Nath and rescind the offer that she had made the previous *343 day. She did, however, offer to settle by accepting a concession from both petitioners of 70 percent of the deficiencies in 1979 and 1980 and 100 percent of the deficiencies in 1981 and 1982. She indicated that respondent would concede the negligence penalties in 1979, 1980, and 1981. Nath rejected the offer. At a hearing before this Court on November 9, 1990, the parties' counsel entered into a basis of settlement of the related case of the Corporation. The Court set the individual petitioners' case for trial on November 15, 1990. Roth proceeded from that point forward with trial preparation, and she does not recall any further settlement offers being made by either side. Petitioners' counsel contend that, in subsequent conversations up to the eve of trial, they offered to settle the case by fully conceding the loan/constructive dividend issue in return for a concession of the innocent spouse issue. Petitioners' counsel contend that this settlement offer remained available during and after the trial. They state that, during a short recess immediately after the direct testimony of Mrs. Sell, settlement of the innocent spouse issue was again discussed and again rejected by *344 Roth. This Court issued its opinion, T.C. Memo. 1992-430, in which we held that petitioner's withdrawals from the Corporation were constructive dividends and determined the net amount after repayments to be $ 585,746.59. We also held that Mrs. Sell qualified as an innocent spouse. Petitioners' counsel then filed the pending motion for litigation and administrative costs with this Court. Respondent has filed a response in opposition to that motion. The parties have submitted memoranda and affidavits in support of their positions in accordance with Rules 231 and 232. The parties have not requested a hearing, and this Court has concluded that a hearing on the motion is unnecessary. Rule 232(a)(3). We will decide the matter based upon petitioners' motion, respondent's objection thereto, and the affidavits and exhibits provided by both parties. OPINION Petitioners are seeking litigation and administrative costs incurred after June 7, 1989, the date of the notice of deficiency. Section 7430(a) provides that, in any administrative or court proceeding, "the prevailing party" may be awarded reasonable administrative costs incurred in connection with an *345 administrative proceeding within the Internal Revenue Service and reasonable litigation costs incurred in connection with a Tax Court proceeding. To be considered a "prevailing party", petitioners must establish that: (1) the position of the United States in the proceeding was not substantially justified; (2) they substantially prevailed with respect to the amount in controversy or with respect to the most significant issue or set of issues presented; and (3) they had a net worth not in excess of $ 2 million at the time the proceedings commenced. Sec. 7430(c)(4)(A). In addition, petitioners must have exhausted the administrative remedies available within the Internal Revenue Service and must not have unreasonably protracted the proceedings. Sec. 7430(b)(1), (4). All of these conjunctive requirements must be met for an award to be made. Sher v. Commissioner, 89 T.C. 79 (1987), affd. 861 F.2d 131 (5th Cir. 1988); Minahan v. Commissioner, 88 T.C. 492, 497 (1987). Petitioners contend that all of the requirements of section 7430 have been met. Petitioners contend that it is undisputed that *346 petitioners have exhausted their administrative remedies, that petitioners have not unreasonably protracted the proceedings, and that their net worth did not exceed $ 2 million at the time the proceedings were commenced. Petitioners conclude that they substantially prevailed with respect to both the amount in controversy and the most significant issue presented in the case; namely, that Mrs. Sell qualified as an innocent spouse. Further, petitioners assert that they also have substantially prevailed with respect to the loan/constructive dividend issue. Petitioners contend that respondent's position during administrative proceedings and during trial in the Tax Court was not substantially justified. Respondent agrees that petitioners have exhausted available administrative remedies and have not unreasonably protracted the proceedings for purposes of litigation costs. Respondent has not disputed that petitioners have met the $ 2 million net worth requirement. However, respondent objects to the awarding of litigation and administrative costs to petitioners because: (1) respondent's position was substantially justified, and (2) petitioners did not substantially prevail on the most *347 significant issue in the case. Respondent also contends that the amount of fees requested by petitioners is not reasonable. [7] If we determine that respondent's position was "substantially justified", we will not need to consider the other matters. Effective for proceedings commencing after November 10, 1988, section 7430(c)(7) provides that the term "position of the United States' means: (A) the position taken by the United States in a judicial proceeding to which subsection (a) applies, and (B) the position taken in an administrative proceeding to which subsection (a) applies as of the earlier of (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue *348 Service Office of Appeals, or (ii) the date of the notice of deficiency.
Thus, to determine if administrative costs should be awarded to petitioners, we must examine the events occurring after the date of the notice of deficiency, and to determine if litigation costs should be awarded, we must examine the events occurring after the filing of the petition. In the notice of deficiency dated June 7, 1989, respondent determined that petitioners were jointly and severally liable for the deficiencies attributable to constructive dividends received by petitioner from the Corporation and that petitioners were liable for additions to tax for the late filing of their Federal income tax returns, for negligence, and for substantial understatement of income tax. In the petition filed September 1, 1989, petitioners contended: (1) that the Commissioner's determination of the deficiencies was erroneous because petitioner's withdrawals from the Corporation were loans, and (2) that Mrs. Sell was entitled to be accorded innocent spouse treatment. Respondent denied both allegations in her answer, which was timely filed with the Court on October 10, 1989. Petitioners assert that respondent *349 unreasonably refused to concede the merits of Mrs. Sell's claim of innocent spouse status. Petitioners contend that respondent's position during administrative proceedings and during trial in the Tax Court was not substantially justified from the time at which respondent had sufficient evidence to determine that Mrs. Sell qualified as an innocent spouse. Petitioners contend that respondent had sufficient evidence warranting concession of the innocent spouse issue by August 4, 1988, the date petitioners submitted their Second Supplemental Protest to respondent's Appeals Office. Petitioners conclude that evidence later adduced at trial, including the testimony of the witnesses, added little to the evidence set forth in the Second Supplemental Protest. It was petitioners' burden to prove that Mrs. Sell was entitled to relief under the innocent spouse provision. [8]Sec. 6013(e)(1)(C) and (D); Rule 142(a). Petitioners now bear the burden of demonstrating that respondent's position was not substantially justified in not conceding that issue. Petitioners must show that legal precedent does not substantially support respondent's position given the facts available to respondent. Rule *350 232(e); Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 688 (1990); DeVenney v. Commissioner, 85 T.C. 927, 930 (1985). *351 In determining whether respondent was reasonable, this Court considers the basis for respondent's legal position and the manner in which respondent maintained that position. Wasie v. Commissioner, 86 T.C. 962, 969 (1986). We must consider all of the facts and circumstances known to respondent which formed the legal basis for the position she took during the administrative proceedings and the litigation. DeVenney v. Commissioner, 85 T.C. at 931. The legislative history of section 7430 also suggests factors that should be considered in evaluating the reasonableness of respondent's position: "(1) whether the government used the costs and expenses of litigation against its position to extract concessions from the taxpayer that were not justified under the circumstances of the case, (2) whether the government pursued the litigation against the taxpayer for purposes of harassment or embarrassment, or out of political motivation, and (3) such other factors as the court finds relevant". VanderPol v. Commissioner, 91 T.C. 367, 369 (1988) (citing House Rept. 97-404, at 12 (1981)). Respondent *352 is given a reasonable period of time in which to resolve a factual issue after receiving all relevant information. Sokol v. Commissioner, 92 T.C. 760, 765 n.10 (1989). However, respondent's decision not to concede a case or the loss of the case at trial does not automatically establish an unreasonable position. See Sokol v. Commissioner, 92 T.C. at 767. [9]
Although petitioners' Second Supplemental Protest is quite voluminous, a closer scrutiny of the documents contained therein reveals a reasonable basis for respondent's reluctance to concede any of the issues in this case. The Second Supplemental Protest contains copies of petitioners' first two protest documents. In these preliminary protests, petitioners' counsel presents narratives of the facts of the case, with little or no independent, corroborating evidence. All of the declarations submitted with the *353 Second Supplemental Protest were executed by family members or friends of Mrs. Sell. The texts of each declaration recite closely the same general points and were obviously prepared by petitioners' counsel. Respondent's counsel cannot be faulted for being skeptical of this evidence. [10] There is no indication in petitioners' filings with this Court that petitioners' counsel attempted to make Mrs. Sell personally available to respondent's counsel for questioning to assess her credibility. Further, it appears that petitioners' counsel did not voluntarily produce potentially damaging evidence or produced it late in the trial-preparation stage. Five days before the trial respondent's counsel independently uncovered evidence that tended to indicate that Mrs. Sell may have known of her husband's business activities; i.e, the existence of the power of attorney and the transfers of property by Mrs. Sell using that power of attorney. Also at the hearing on November 9, 1990, the Court waived for petitioners' benefit the cutoff date for exchange of certain documents that had not been timely exchanged with respondent's counsel, as required by the Court's Standing Pre-Trial Order. *354 The determination of the applicability of the innocent spouse provision can only be made through an examination of all of the facts and circumstances of the case, including an assessment of the credibility of the "innocent spouse". As the Court of Appeals for the Ninth Circuit stated in Sliwa v. Commissioner, 839 F.2d 602, 608 (9th Cir. 1988), "we cannot say that the government was unreasonable in requiring better proof than * * * [Mrs. Sell's] mere assertions of innocence (whether in a verified complaint or no), or at least some independent corroboration of those assertions". The issues in this case were quintessentially factual in nature; the facts were sharply controverted and vigorously litigated at trial. Only after submission of all of the evidence by both parties at trial, Mrs. Sell's direct testimony and cross-examination, this Court's own assessment of Mrs. Sell's credibility, and thorough review of the entire record of this case did it become clear that Mrs. Sell indeed was entitled to innocent spouse relief. Although the Court indicated on the record its tentative assessment of Mrs. Sell's credibility and its view that she would probably *355 prevail on her claim as an innocent spouse, nonetheless respondent's counsel in post-trial briefs presented a strong marshaling of facts and arguments supporting a contrary result. Those briefs gave the Court pause and required the Court again to carefully review the entire record. While the Court ultimately ruled in Mrs. Sell's favor, the Court's extended treatment of the issue in the opinion shows that such result was hardly a foregone conclusion. Although respondent lost on the issue, there is no indication that respondent did not engage in settlement negotiations in good faith or pursued her position unreasonably or for any other improper purpose. The issue was a close one, turning largely on the Court's final assessment of Mrs. Sell's credibility, and respondent was entitled to have the Court adjudicate the issue. Therefore, we hold that respondent did not act unreasonably in declining to concede the innocent spouse issue. Petitioners also contend that they substantially prevailed regarding the loan/constructive dividend issue. They assert that they proved at trial that petitioner withdrew, at most, only 60 percent of the amounts alleged by respondent and that respondent *356 was unreasonable not to have given credit for repayments to the Corporation listed on the ledger cards. Petitioners contend that they provided respondent's counsel unlimited access to the Corporation's records and to its accountants. Accordingly, petitioners conclude that respondent's position was not substantially justified with respect to at least 40 percent of the withdrawals at issue. Respondent counters that petitioners' own accountants acknowledged repeatedly that there were significant problems with the Corporation's ledger card system. The Court agreed and so found. It was not unreasonable for respondent to refuse to accept these ledger cards at their face value. While the Court overruled respondent's objections and received the ledger cards in evidence, the Court itself struggled to make sense out of these poor accounting records. Although the Court ultimately concluded some repayments to the Corporation had indeed occurred, and gave petitioner credit for the same, nonetheless the issue was extremely close. Its resolution was not based on just review of the ledger cards themselves but on the totality of the testimony by the accounting witnesses and the record as a *357 whole. Once again, petitioners bore the burden of proving the merits of their position and the credibility of the evidence submitted. Further, petitioners are attempting to distract from the actual outcome of this issue, upon which they did not prevail at all: the Court found that all of petitioner's withdrawals were constructive dividends, not loans as asserted by petitioners. Petitioners appear to be arguing that, since respondent did not prevail on the innocent spouse issue and prevailed as to "only 60 percent" of the adjustments in the loan/constructive dividend issue, her position not to concede was not substantially justified. We do not agree: The logical extension of petitioners' argument is that the party whose evidence fails to persuade the trier of fact has taken an unreasonable position. If a party can be chastised for such a failure, then every losing party must be so chastised. Such an interpretation does not manifest Congress' intention in enacting this statute and we will not endorse it.
VanderPol v. Commissioner, 91 T.C. at 370. (Citations omitted.) Petitioners have not proved that respondent's position was not *358 substantially justified. As a result, petitioners have not satisfied all of the requirements of section 7430. As we see the matter, counsel for both parties in good faith tried to settle this case but were unable to do so. Having failed in their settlement efforts, they tried the case before this Court. The issues were purely factual, sharply controverted, and strenuously litigated. The Court adjudicated those close issues. There is no basis for a claim of litigation costs; thus, we deny petitioners' motion. [11]
In light of the foregoing, An appropriate order and decision will be entered.
Footnotes
1. The facts are based upon the pleadings (petition and answer), this Court's opinion, T.C. Memo. 1992-430↩, petitioners' motion for award of reasonable litigation and administrative costs, the exhibits attached thereto, and the memorandum brief in support of that motion, the affidavits of Robert G. Nath and John P. Dedon attached to that motion, respondent's notice of objection in opposition to petitioners' motion and the affidavit of Kristine A. Roth attached thereto, and respondent's memorandum brief in opposition to petitioners' motion.
2. The case of the corporate petitioner (docket No. 21567-89) was ultimately settled and will not be discussed any further unless pertinent to the individual petitioners' case.↩
3. The "Second Supplemental Protest" consists of the following documents: (1) the initial protest of September 14, 1987; (2) the supplemental protest of November 5, 1987; (3) the declaration of Christopher P. Sell; (4) the declaration of Ellen Sell Torrington; (5) declaration of Ralph F. Sell, Jr.; (6) declaration of Edward G. Huber, Jr.; (7) declaration of James Richards; (8) declaration of Patricia M. Sell; (9) declaration of Evelyn Harmon; (10) declaration of Susan Scott; and (11) a memorandum of law discussing the matters at issue in the case.↩
4. On August 13, 1986, petitioners and the other stockholders of the Corporation, the MacVeighs, entered into a restitution agreement in which petitioners obligated themselves to repay to the Corporation the principal sum of $ 725,000, the agreed-upon amount of their indebtedness to the Corporation as of December 31, 1984, plus interest thereon. Petitioners secured this obligation with a pledge of their corporate stock. The agreement established a repayment schedule, with a final payment being due on or before December 31, 1990. In 1990, petitioners surrendered their stock in the Corporation, valued at $ 453,000, in partial payment of this contractual obligation. See Estate of Sell v. Commissioner, T.C. Memo. 1992-430↩.
5. On July 28, 1980, petitioner executed a general power of attorney-in-fact in favor of his wife and his elder son, Greg Sell. Mrs. Sell had been advised by counsel that she should obtain this power of attorney in order to be able to handle her personal affairs should her husband not survive his precarious health condition. Petitioner did recover, and Mrs. Sell did not need to use the power of attorney at that time. In 1984, petitioner took a 10-day cruise through the Panama Canal. As feared by his family, petitioner did not return aboard his scheduled airline flight. A distraught Mrs. Sell contacted an attorney friend who helped in locating petitioner. This attorney also suggested to Mrs. Sell that, in order to protect herself then and in the future, she should transfer the family home and vacation home into a trust with someone in whom she had confidence. Mrs. Sell transferred the property to her daughter, Ellen Sell Torrington, in trust. Also, during this time, Mrs. Sell learned that certain properties that she considered to be corporate properties were titled in her and her husband's names. With the advice of counsel, she transferred the titles to those properties to the Corporation under the power of attorney she had received in 1980. In our opinion, we found that these transfers were not related to the fact that the Internal Revenue Service was by then examining the Corporation's returns as well as petitioners' individual returns. Estate of Sell v. Commissioner, T.C. Memo. 1992-430↩.
6. Apparently, there was quite a divergence in proposals. Roth states that Dedon's draft deleted substantially all of the paragraphs that she had proposed and substituted many paragraphs to which she had objected. Roth further states that Dedon refused to review either draft, paragraph by paragraph, either to explain his objections to her proposal or to explain the basis for the paragraphs which he was proposing.↩
7. Petitioners' motion requests reimbursement for litigation costs as follows: For the period of June 7, 1989, through the preparation of briefs in 1991, attorneys' fees of $ 80,621 and accountant's fees of $ 4,940, and, for preparation of this motion for litigation and administrative costs, attorneys' fees of $ 10,283.↩
8. Under sec. 6013(e), a taxpayer must meet five prerequisite conditions in order to be considered an innocent spouse and be granted relief from liability for deficiencies and additions to tax. First, the spouses must have filed a joint return under sec. 6013. Second, there must have been a substantial understatement of tax attributable to the grossly erroneous items of one spouse. Third, the other spouse must establish that he or she did not know and had no reason to know of the substantial understatement. Fourth, considering all of the facts and circumstances, it must be inequitable to hold the other spouse liable for the deficiency attributable to the substantial understatement. Last, the understatement must exceed a specified percentage of the other spouse's preadjustment year adjusted gross income; this final requirement does not apply in cases of omissions from gross income such as are involved in the present case. Sec. 6013(e)(4)(E)↩.
9. See also Brailsford v. Commissioner, T.C. Memo. 1991-639↩.
10. Compare, for example, the declaration of Ellen Sell Torrington with her testimony on cross-examination at trial.↩
11. The Court hopes that this case does not represent an unhealthy trend toward counsel feeling that they must automatically claim litigation costs in every case in which the taxpayer prevails on any issue or on any part of an issue no matter how hotly contested. If so, each case then spawns a second case for litigation costs which potentially only adds to the costs to be borne by represented taxpayers.↩