T.C. Memo. 1998-405


UNITED STATES TAX COURT


DONALD C. RICHARDSON AND RITA M. ALLAIRE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

PAIGE COMMUNICATIONS CORPORATION OF LOUISIANA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 12252-97, 12253-97.    Filed November 12, 1998.


<u>William A. Neilson</u> and <u>Joseph J. Ecuyer III</u>, for

petitioners.

<u>Joseph Ineich</u>, for respondent.


MEMORANDUM OPINION


PANUTHOS, <u>Chief Special Trial Judge</u>:  This matter is before

the Court on petitioners' motions for award of reasonable

litigation and administrative costs under section 7430[1] and Rules 230, 231, and 232. These related cases have been consolidated for the purpose of considering these motions.

On March 13, 1997, respondent issued statutory notices of deficiency to petitioner Paige Communications Corporation of Louisiana (PCCL) and to petitioners Donald C. Richardson and Rita M. Allaire[2], husband and wife, for the taxable year ended 1993. Deficiencies in income tax and penalties were determined as follows:

| | | Penalties | |
| Taxpayer | Deficiency | Sec. 6663(a) | Sec. 6662(a)[1] |
| --- | --- | --- | --- |
| Richardson/Allaire | $12,781 | $9,586 | -0- |
| PCCL | 104,002 | 78,002 | -0- |

[1] The negligence penalty was imposed as an alternative to the fraud penalty.

Respondent determined that petitioners received income in the form of constructive dividends from PCCL in the amount of $47,086. Respondent determined that the constructive dividends consisted of (1) PCCL corporate income in the amount of $14,443 diverted for petitioners' personal use; (2) improvements to petitioners' residence paid for by PCCL in the amount of $8,549;

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] "Petitioners" will collectively refer to petitioners Richardson and Allaire. "Petitioner" will refer to petitioner Donald C. Richardson individually.

and (3) petitioners' personal expenses charged to American Express and paid by PCCL in the amount of $24,094.

Respondent also determined a deficiency against PCCL. The adjustments to PCCL were (1) unreported corporate income in the amount of $14,443; (2) disallowed "Other Deductions" in the amount of $263,956; (3) a disallowed interest deduction in the amount of $37,777; and (4) an upward adjustment to "Cost of Goods Sold" in the amount of $13,770 due to an error on the return.

Petitions were timely filed with this Court by petitioners and PCCL on June 11, 1997. At that time, petitioners were residents of Kenner, Louisiana. PCCL, a Louisiana corporation, had its principal office at Metairie, Louisiana.

In the timely filed answer in each case respondent included specific allegations in support of the determination that petitioners and PCCL were liable for a penalty due to fraud. Respondent alternatively alleged in the answer in each case that petitioners and PCCL, respectively, were liable for an accuracy-related penalty for 1993. Additionally, on August 8, 1997, the cases were sent to the Appeals Division of the Internal Revenue Service in New Orleans, Louisiana, for consideration.

The cases were calendared for trial at a trial session commencing March 9, 1998, in New Orleans, Louisiana. Prior to trial, and after several meetings between the Appeals Office and petitioners, the cases were settled. Stipulations of settlement were filed for each docketed case. The stipulations reflected

(1) a deficiency in income tax due from petitioners in the amount of $2,358; (2) a penalty due from petitioners in the amount of $472 as provided under section 6662(a); (3) a deficiency in income tax due from PCCL in the amount of $698 (without taking into consideration a tentative net operating loss carryback allowance of $1,214 from 1996); and (4) a penalty due from PCCL in the amount of $140 as provided under section 6662(a). No penalty was due from petitioners or PCCL for fraud as provided under section 6663.

Petitioners and PCCL each filed a motion for an award of reasonable litigation and administrative costs. Respondent filed an objection to each motion. Petitioners and PCCL filed a reply to respondent's objections. Each party submitted memoranda in support of their respective positions. None of the parties have requested a hearing in this matter. We conclude that a hearing is not necessary to decide this motion. Rule 232(a)(2).

The issues for decision are: (1) Whether respondent's position in the underlying proceedings was substantially justified; and (2) whether the amount of costs claimed by petitioners and PCCL with regard to the litigation and administration costs is reasonable.

Background

The following facts are based on the entire record, including the affidavits and exhibits submitted by the parties and the parties' pleadings.

1. Events Leading to Examination by Internal Revenue Service

Petitioner had become friends with Edward Paige (hereinafter Paige) in 1974. In 1982, Paige formed Paige Communications Corporation, a California entity (Paige-Cal)[3]. In 1983 a joint venture was entered into between Paige-Cal and petitioners to form PCCL.

At PCCL's inception, petitioner Allaire owned 375 shares of the company, and Paige-Cal, through Paige, its president, owned the remaining 125 shares. During 1988, Paige-Cal's shares were transferred to petitioner Allaire, who then became the sole shareholder of PCCL. Petitioner was PCCL's president.

In November 1992, petitioner hired Paige as a consultant to PCCL. However, by way of a letter dated October 1, 1993, petitioner Allaire advised Paige that his position at PCCL was abolished effective October 29, 1993, and that his employment with the company would cease on that date.

Subsequent to his termination from PCCL, Paige wrote a letter to the Internal Revenue Service (IRS) dated March 22, 1994. This letter enumerated specific allegations against petitioners and PCCL. Paige's allegations were premised upon information he allegedly obtained while employed by PCCL. Paige

---

[3] The record does not reflect whether Paige-Cal was an incorporated business as provided by California law. For this reason, we are referring to it as a California entity.

alleged, inter alia: (1) Information provided to the IRS regarding PCCL was improperly reported; (2) petitioner sold items from PCCL's inventory and payments for such items were made to petitioner and not reported by petitioner or PCCL; (3) some of petitioners' personal expenses were paid by PCCL, including payments for improvements to their home; (4) PCCL's books were "being fixed" so as to report little or no tax liability; and (5) petitioners formed a shell company, Dorrial, Inc., to divert funds from PCCL.

In support of his allegations in the letter Paige included summaries of (1) equipment removed by petitioner from PCCL's inventory; (2) petitioners' personal expenses paid by company checks and company credit cards; and (3) company equipment installed at petitioners' home. In addition, Paige attached schedules, PCCL's balance sheets, and PCCL's financial statements to support the above summaries. Paige also provided the IRS with names of witnesses to support his allegations and with names of individuals and businesses to whom Paige believed petitioner was selling the inventory items for personal gain.

2. <u>IRS Examination and Investigation</u>

Beginning in October 1994, the income tax returns for petitioners, PCCL, and Dorrial, Inc. (a related entity) were examined. The exam included the 1993 tax year as well as prior years. The revenue agent conducting the examination interviewed

individuals that either purchased equipment from PCCL or provided goods and/or services to petitioners and PCCL. The revenue agent also interviewed petitioners and former employees of PCCL. The revenue agent also requested and obtained documents relevant to the examination.

At some point the revenue agent made a referral to the Criminal Investigation Division of the IRS (CID). Special agents from CID interviewed petitioners on June 7 and June 15, 1995. During the course of the interviews, petitioners discussed Paige and his involvement with PCCL, as well as the improvements made to their home, the unreported sales of PCCL equipment, and Dorrial, Inc.

Throughout the examination and investigation, petitioners maintained they were unaware PCCL paid for the improvements to their home. They alleged that Paige made all arrangements for the work to be completed. Notwithstanding the above, it was discovered that petitioner Allaire had signed PCCL's checks in order to pay for the home improvements. She claimed to have no knowledge of the purpose of the checks. Additionally, respondent was provided with specific invoices, memoranda, and a proposal from Wayne Catalano and Al Horn, third-party contractors that completed the improvements to petitioners' home. These documents, in total, reflected that PCCL was billed in the amount of $8,549 for work completed at petitioners' home.

Also as part of the examination, the revenue agent conducted a telephone interview with Wayne Catalano. Catalano informed the revenue agent that petitioner was present at the first consultation pertaining to the work to be done at the home. He also informed the revenue agent that petitioner was aware of the circumstances surrounding the work and that petitioner delegated the authority to proceed with the work to Paige. The revenue agent had also interviewed a former employee of PCCL. This former employee specifically informed the revenue agent that petitioners were aware of the payment arrangement for the home improvements.

During the interviews with the special agents, petitioner admitted: (1) Making two sales of PCCL's inventory; (2) having the checks made out in his name; (3) not reporting the income; (4) using the funds for personal expenses; and (5) having made these types of sales in the years 1990 through 1993, although petitioner claimed to have split the income with Paige during 1993. During the course of the investigation, respondent received evidence of a minimum of eight unreported sales made payable to petitioner in 1993.

On August 19, 1996, petitioners' attorney, William Neilson (Neilson), wrote a letter to a special agent involved with the criminal investigation. In the letter, Neilson questioned Paige's credibility and motives in contacting the IRS with these allegations against petitioners and PCCL. In addition, Neilson

discussed the subject of the home improvements. Specifically, the special agent was informed "the Richardsons were aware that Mr. Paige used corporate funds to improve their property, although they were not privy to the exact amounts or how those funds were disbursed". Also, Neilson attempted to categorize the unreported funds received by petitioner from the sale of PCCL equipment as either business or investment expenses.

Sometime in the beginning of March 1997, respondent requested petitioners to extend the period of limitations with respect to the examination of the individual and corporate income tax returns. Petitioners did not agree to the extension. On February 28, 1997, respondent scheduled an appointment with petitioners for March 17, 1997, to conclude the examination of petitioners' return. On March 4, 1997, respondent contacted petitioners' attorney to cancel the March 17, 1997, appointment based on the belief the statute of limitations was set to expire.

On March 5, 1997, respondent sent petitioners proposed changes to their 1993 tax return.[4] On March 11, 1997, respondent issued a letter to petitioner notifying him that he was no longer the subject of a criminal investigation. On March 13, 1997, respondent issued the respective notices of deficiency. After petitions and answers were filed, petitioners met with respondent's appeals officer on several occasions. During these

_____

[4] We assume proposed changes were also sent with respect to PCCL; however, the record does not so indicate.

meetings, pertinent documentation pertaining to the issues in dispute was provided to respondent.  Subsequently, respective settlements were reached.

Discussion

    1.  General

Section 7430(a) provides that the prevailing party in any administrative or court proceeding may be awarded a judgment for (1) reasonable administrative costs incurred in connection with such administrative proceedings within the IRS, and (2) reasonable litigation costs incurred in connection with such court proceedings.  Sec. 7430(a), (c).[5]  However, there is an exception to the "prevailing party" rule if the United States establishes that its position was substantially justified.  Sec.

---

[5]    Sec. 7430(c)(1), as applicable to these cases, provides that reasonable litigation costs include reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $110 per hour.  Sec. 7430(c)(2), as applicable in these cases, provides that the term "reasonable administrative costs" only includes "costs incurred on or after the earlier of (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals, or (ii) the date of the notice of deficiency."

The Internal Revenue Service Restructuring & Reform Act of 1998 (RRA 1998), enacted July 22, 1998, amended the above-noted sections.  Pub. L. 105-206, secs. 3101(a)(1), (g), 112 Stat. 685, 727-729.  The amendments apply to services performed or costs incurred more than 180 days after the date of the enactment of this Act (180 days after July 22, 1998).  RRA 1998 sec. 3101(g), 112 Stat. 729.  Accordingly, RRA 1998 is not applicable to the instant cases.

7430(c)(4)(B).[6]  The parties dispute (1) whether the

Commissioner's position was substantially justified, and (2)

whether the amounts of costs and attorney's fees claimed by

petitioners and PCCL are reasonable.[7]

To decide whether respondent's position was substantially

justified, the Court must first identify the point in time at

which respondent is considered to have taken a position and then

decide whether the position taken from that date forward was

substantially justified.  In general, we look separately at the

dates that respondent took a position in the administrative

proceeding and in the proceeding in this Court.  Sec.

7430(c)(7)(A) and (B); Huffman v. Commissioner, 978 F.2d 1139,

---

[6]    Sec. 7430, as amended by the Taxpayer Bill of Rights 2
(TBOR 2), Pub. L. 104-168, secs. 701-704, 110 Stat. 1452, 1463-
1464 (1996), requires the Commissioner to establish that the
Commissioner's position in such proceedings was substantially
justified.  TBOR 2 sec. 701(a) and (b), 110 Stat. 1463.  The
amendments to sec. 7430 are effective with respect to
"proceedings commenced after * * * [July 30, 1996]".  TBOR 2
secs. 701(d), 702(b), 703(b), and 704(b), 110 Stat. 1464.  As the
petition in each of these cases was filed in June 1997, section
7430 as amended by TBOR 2 applies.  Maggie Management Co. v.
Commissioner, 108 T.C. 430, 441 (1997).  As such, the burden is
on the Commissioner to establish that the Commissioner's position
was substantially justified.

[7]    Respondent concedes that petitioners and PCCL have:
(1) Substantially prevailed in the proceeding within the meaning
of sec. 7430(c)(4)(A)(i); (2) exhausted their administrative
remedies within the meaning of sec. 7430(b)(1); (3) not
unreasonably protracted the Court or administrative proceedings
within the meaning of sec. 7430(b)(3); and (4) satisfied the net
worth requirements of sec. 7430(c)(4)(A)(ii).

1148 (9th Cir. 1992), affg. in part, revg. in part and remanding T.C. Memo. 1991-144.

Respondent takes a position in an administrative proceeding as of the earlier of the date the taxpayer receives an IRS Appeals decision or the Commissioner sends the notice of deficiency. Sec. 7430(c)(7)(B). Respondent's position in the administrative proceeding was established on March 13, 1997, when the statutory notices of deficiency were mailed. Respondent took a position in the judicial proceeding in these cases on August 12, 1997, when respondent's answers were filed. Sec. 7430(c)(7)(A); California Marine Cleaning, Inc. v. Commissioner, T.C. Memo. 1998-311; Kahn-Langer v. Commissioner, T.C. Memo. 1995-527; Lockett v. Commissioner, T.C. Memo. 1994-144 (citing Huffman v. Commissioner, supra at 1148); Amann v. Commissioner, T.C. Memo. 1993-542, affd. per curiam without published opinion 40 F.3d 1235 (1st Cir. 1994). In this instance it is not necessary to analyze respondent's position separately on each of these dates as respondent's position was the same at both times. Swanson v. Commissioner, 106 T.C. 76, 87 (1996).

We now consider whether respondent's position in the administrative and judicial proceedings was substantially justified. We analyze respondent's position in the context of what caused respondent to take that position. Lennox v. Commissioner, 998 F.2d 244, 247-249 (5th Cir. 1993), revg. in

part and remanding T.C. Memo. 1992-382.[8]  Additionally, we look
at the manner in which respondent maintained that position.
Wasie v. Commissioner, 86 T.C. 962, 969 (1986); Kahn-Langer v.
Commissioner, supra; Amann v. Commissioner, supra.  Factors which
may be considered include:

> (1)  whether the government used the costs and expenses
> of litigation against its position to extract
> concessions from the taxpayer that were not justified
> under the circumstances of the case, (2) whether the
> government pursued the litigation against the taxpayer
> for purposes of harassment or embarrassment, or out of
> political motivation, and (3) such other factors as the
> Court finds relevant.  [citing H. Rept. 97-404, at 12
> (1981), Sher v. Commissioner, 89 T.C. 79, 85 (1987),
> affd. 861 F.2d 131 (5th Cir. 1988).]

Our analysis of what caused respondent to take that position
may include events preceding the date the notices of deficiency
were issued.  Lennox v. Commissioner, supra; Uddo v.
Commissioner, T.C. Memo. 1998-276; Williford v. Commissioner,
T.C. Memo. 1994-135.  The reasonableness of respondent's position
and conduct necessarily requires considering what respondent knew
at the time.  Rutana v. Commissioner, 88 T.C. 1329, 1334 (1987);
DeVenney v. Commissioner, 85 T.C. 927, 930 (1985); Triplett v.
Commissioner, T.C. Memo. 1998-313.  We ask ourselves "whether
* * * [the Commissioner] knew or should have known that [the
Commissioner's] position was invalid at the onset."  Estate of

---

[8]    Venue for appeal in these cases lies to the Court of
Appeals for the Fifth Circuit.  Accordingly, precedent from that
jurisdiction controls our analysis of the issues.  Golsen v.
Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th
Cir. 1971).

Williamson v. Commissioner, T.C. Memo. 1997-77 (quoting Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182).

Whether respondent's position was substantially justified turns on a finding of reasonableness, based upon all the facts and circumstances, as well as the legal precedents relating to the case. Pierce v. Underwood, 487 U.S. 552 (1988); Nalle v. Commissioner, supra; Coastal Petroleum Refiners, Inc. v. Commissioner, 94 T.C. 685, 688-696 (1990). A position is substantially justified if that position could satisfy a reasonable person. Pierce v. Underwood, supra at 565; Powers v. Commissioner, 100 T.C. 457, 473 (1993), affd. on this issue, revd. in part, and remanded on other issues 43 F.3d 172 (5th Cir. 1995). Respondent's position may be incorrect but substantially justified "if a reasonable person could think it correct". Pierce v. Underwood, supra at 566 n.2.

The reasonableness standard applies to motions for litigation and administrative costs under section 7430. Nicholson v. Commissioner, 60 F.3d 1020, 1025-1026 (3d Cir. 1995), revg. T.C. Memo. 1994-280. For a position to be substantially justified, there must be "substantial evidence" to support it. Pierce v. Underwood, supra at 564-565; Maggie Management Co. v. Commissioner, 108 T.C. 430, 443 (1997); Powers v. Commissioner, supra. "That phrase does not mean a large or considerable amount of evidence, but rather 'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion'." Pierce v. Underwood, supra at 564-565 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Respondent argues that respondent's position was substantially justified as to each issue raised in the notices of deficiency. We have previously adopted an issue-by-issue approach to the awarding of costs under section 7430. Swanson v. Commissioner, supra at 102; see Powers v. Commissioner, 51 F.3d 34, 35 (5th Cir. 1995).

### A.  Adjustment to Petitioners' 1993 Tax Return

The statutory notice of deficiency issued to petitioners included an adjustment in the amount of $47,086 based on payments made by PCCL either to petitioners or for their benefit. Respondent determined that petitioners received constructive dividends from three separate transactions.

Based on the information set forth below, which was known to respondent at the time the statutory notice of deficiency was issued, and which information remained unchanged at the time of the answer to their petition, we are satisfied that respondent had a basis in fact for the position that petitioners had unreported income in the amount of $47,086.

#### (1).  Constructive Dividend:  Unreported Income Received for Sales of PCCL Equipment

Petitioner admitted to special agents during interviews with CID that he made two sales of PCCL equipment, had the proceeds of

the sales made payable to himself, used the funds for personal expenses, and did not report the proceeds as income. Respondent obtained from third-party sources copies of eight canceled checks for 1993 listing petitioner as the payee for sales of equipment. These canceled checks totaled $14,443.

    (2). <u>Constructive Dividend: Improvements to Petitioners' Home</u>

Respondent received invoices and other documentation from contractors who performed work on petitioners' home. The invoices were made out to and paid by PCCL in the amount of $8,549. Petitioner Allaire signed the checks as an agent of PCCL in payment of the invoices. Respondent also received information from third-party sources that petitioners were aware of the payment arrangements.

    (3). <u>Constructive Dividend: Petitioners' Personal Expenses Charged to PCCL's American Express Account</u>

Respondent's revenue agent had reviewed PCCL's American Express statements. The revenue agent concluded that $24,094 contained in these statements was attributable to personal expenses of petitioners.

  B. <u>Adjustments to PCCL's 1993 Tax Return</u>

The statutory notice of deficiency issued to PCCL included adjustments in the total amount of $316,176.[9] Based on the

---

[9] Less the $13,770 upward adjustment to "Cost of Goods Sold" due to an error on the return.

information set forth below, which was known to respondent at the time the statutory notice of deficiency was issued, and which information remained unchanged at the time of respondent's answer to the petition, we are satisfied that respondent had a basis in fact for the position that PCCL had (1) received unreported income in the amount of $14,443; (2) erred in claiming "Other Deductions" to the extent of $263,956; and (3) erred in claiming an interest expense deduction in the amount of $37,777.

### (1).  Unreported Income

The notice of deficiency issued to PCCL included an adjustment in the amount of $14,443 due to unreported income from the sale of PCCL's equipment by petitioner.  Respondent received copies of eight canceled checks made out to petitioner.  Also, as described in A.(1) above, petitioner admitted to sales by PCCL.

### (2).  Other Deductions (PCCL)

On its 1993 tax return, PCCL had claimed a total of $376,431 in "Other Deductions".[10]  The notice stated that "it has not been verified that any amount in excess of $109,875 constitutes an ordinary and necessary business expense or was expended for the purpose designated."

---

[10]    We note that petitioners contend in their pleadings that respondent arbitrarily denied all of PCCL's business expenses.  The notice of deficiency is clear that only a portion of the expenses were disallowed.

Respondent had interviewed a third-party former employee of PCCL. This interview provided respondent with information that PCCL was "fixing its books". In addition, respondent had received documentation from Paige, which was supported by the interview with the employee.

In <u>Simpson Fin. Servs., Inc. v. Commissioner</u>, T.C. Memo. 1996-317, the Commissioner disallowed a portion of the taxpayer's claimed expenses because of lack of substantiation. Documentation was eventually provided to the Commissioner's appeals officer, and subsequently to District Counsel. Based on the documentation provided to the Commissioner, the parties settled all issues raised in the notice of deficiency. We denied the taxpayer's request for an award of attorney's fees. Specifically, we said:

> In the notices of deficiency, respondent premised the adjustments primarily on petitioners' failure to substantiate items on their returns. Deductions are a matter of legislative grace, and petitioners bore the burden of establishing their entitlement thereto. * * * In addition, section 6001 imposed on petitioners an affirmative duty to maintain books and records sufficient to establish items reported on their returns. It was reasonable for respondent not to concede the adjustments until she had received and verified adequate substantiation for the items in question. <u>Harrison v. Commissioner</u>, 854 F.2d 263, 265 (7th Cir. 1988), affg. T.C. Memo. 1987-52; <u>Sokol v. Commissioner</u>, 92 T.C. 760, 765 (1989). [Citation omitted.]

Petitioners substantiated a large part of the expenses during their meetings with respondent's Appeals officer by providing the requisite documentation at that time.

(3). Interest Expense Deduction (PCCL)

The notice of deficiency to PCCL adjusted a claimed interest expense deduction in the amount of $37,777. Respondent disallowed the interest expense deduction because "it has not been established that any amount constitutes an ordinary and necessary business expense or was expended for the purpose designated nor that a bona fide debt existed". For the reasons stated in the "Other Deductions" analysis, respondent had a basis in fact at the time of the notice of deficiency for his position of disallowing the interest deduction. PCCL did not substantiate this claimed deduction until it provided the requisite documents to respondent's Appeals Office subsequent to the filing of the petition.

In addition, during the course of respondent's examination, respondent had interviewed a former employee of PCCL with regard to this matter. Respondent was provided with pertinent information that a related entity, Dorrial, Inc., was set up as a "shell corporation", with the purpose of diverting PCCL funds. Also, Paige had provided respondent with information regarding the loan and related company in issue.

Based on the foregoing analysis, we also conclude that respondent had a basis in law for all of the adjustments in the notices of deficiency and the answer to the petition, as provided under the Internal Revenue Code.

C.  Fraud (PCCL and Petitioners)

Respondent determined that PCCL and petitioners were liable for penalties for fraud as provided under section 6663. Respondent's agents conducted an examination and investigation of these cases from October 1994 through March 1997.  This investigation included interviewing third parties that had relevant information and/or documentation pertinent to the issues at hand.  In addition, respondent's revenue agent and special agents interviewed petitioners, sent document requests to petitioners, and examined PCCL's financial statements. Respondent's revenue agent thoroughly reviewed PCCL's American Express statements and drafted a report based on her conclusions of the examination.

With regard to the unreported income, petitioner admitted to receiving income from selling PCCL's inventory.  He admitted these sales did not go through PCCL's normal sales channels.  He also admitted that such income was not reported.  Respondent was aware that petitioners were in control of PCCL.

With regard to the home improvements, respondent discovered petitioner Allaire signed PCCL's checks to pay for the work being

done.  Wayne Catalano, a contractor who completed some of the improvements to the home, informed respondent that petitioner was present at the home when the first meeting was conducted regarding the improvements.  He informed respondent that petitioner was aware of what was going on.  Petitioner had delegated the authority to Paige to handle the transaction.

Petitioners contended throughout the investigation that they were unaware PCCL had paid the expenses for the improvements to the home.  However, petitioners were aware they had not paid the home improvement expenses themselves.  In addition, petitioners' and PCCL's attorney informed respondent by letter that petitioners were aware of PCCL's having paid the home improvement expenses but they were not privy to the amounts.

Based on this information, the information provided to respondent regarding Dorrial, Inc., and the information provided to respondent regarding PCCL, we conclude respondent had a basis in fact and law for determining petitioners and PCCL were liable for penalties for fraud under section 6663.  See Whitesell v. Commissioner, 90 T.C. 702 (1988); Reinhardt v. Commissioner, T.C. Memo. 1995-82.

2.  Petitioners' Arguments

Petitioners argue that the resulting settlement of the deficiencies to amounts that were minimal in comparison to the amounts contained in the notices of deficiency, and the

settlement of the penalties for negligence, instead of fraud, indicate that respondent was not substantially justified. We disagree. The fact that the Commissioner eventually loses or concedes a case does not establish that a taxpayer is entitled to an award of reasonable litigation and administrative costs. Wilfong v. United States, 991 F.2d 359, 364 (7th Cir. 1993); Hanson v. Commissioner, 975 F.2d 1150, 1153 (5th Cir. 1992); Sokol v. Commissioner, 92 T.C. 760, 767 (1989). However, it is a factor to be considered. Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); California Marine Cleaning, Inc. v. Commissioner, T.C. Memo. 1998-311.

In their motions, petitioners and PCCL claimed that respondent had access to all records throughout the course of the investigation. It is well settled that a taxpayer is required to keep permanent books of account and records to substantiate the income and expenses reported on his income tax return. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Generally, when a taxpayer does not produce substantiation of claimed deductions, disallowance is proper. Amann v. Commissioner, T.C. Memo. 1993-542, affd. 40 F.3d 1235 (1st Cir. 1994); see Roberts v. Commissioner, 62 T.C. 834, 836-837 (1974); Schnelten v. Commissioner, T.C. Memo. 1993-264.

There is nothing in the record that suggests petitioners' and PCCL's records and books were available to respondent. It

took several meetings with respondent's Appeals officer before all the voluminous documentation required to substantiate the claimed deductions were supplied to respondent.  This documentation was not produced during the examination.  The issue is not whether petitioners and PCCL had documentation supporting their position.  Rather, the issue is whether respondent had a basis in fact for the position in the notices of deficiency.  As stated above, we conclude that respondent did.

Petitioners and PCCL also contend that respondent's position was not substantially justified because petitioners and PCCL refused to extend the statute of limitations.  They contend "respondent issued this notice * * * simply because the statute of limitations was set to expire".  Even if it were shown to be true that respondent issued the notices to toll the running of the statute of limitations, that is not an unreasonable action for respondent to take.

In Chaum v. Commissioner, 69 T.C. 156 (1977), the IRS issued a notice of deficiency to toll the running of the statute of limitations after the taxpayers refused to consent to an extension.  We rejected the taxpayers' arguments that the IRS action was arbitrary.  Id. at 160-164.  In Wasie v. Commissioner, 86 T.C. 962, 969 (1986), we found that the IRS had acted reasonably in issuing a notice of deficiency where the taxpayer had refused to extend the statute of limitations.  See also

Harrison v. Commissioner, 854 F.2d 263 (7th Cir. 1988), affg. T.C. Memo. 1987-52.

Petitioners and PCCL also contend that the notices of deficiency were based on respondent's sole reliance on a "bad whistle blower", and, therefore, respondent was not substantially justified in issuing the notices. Petitioners contend that they notified respondent of Paige's lack of credibility and questionable motives for making allegations against petitioners and PCCL in August 1995. Petitioners claim that respondent was therefore notified at an early stage of the investigation and, essentially, should not have continued the investigation.

Petitioners' letter was dated August 19, 1996, not 1995 as petitioners contend. Respondent was provided information which asserted that Paige lacked credibility a year and 10 months after the investigation had begun. Respondent's determinations were not based solely on Paige's allegations. Paige also submitted substantial documentation to respondent, along with a list of witnesses. Paige's allegations may have triggered an examination of the 1993 and previous years tax returns; however, it was the subsequent examination and criminal investigation that provided information that caused respondent to issue the notices of deficiency.

There is no indication in the record that respondent undertook a position that was not substantially justified. For

example, there appears to be no instance of respondent's failing to consider a claim made by PCCL for entitlement to a deduction that had been supported by sufficient proof.  In the context of what respondent knew at the time the notices of deficiency were issued and the petitions were answered, there was substantial evidence to support respondent's position.

3.  Conclusion

We conclude that respondent had a reasonable basis in fact and law for all issues raised in the notices of deficiency based on the investigation of these cases conducted by respondent before trial.  See Reinhardt v. Commissioner, T.C. Memo. 1995-82. We also conclude that respondent's position that petitioners and PCCL were liable for the penalties for fraud, or alternatively, for negligence for 1993 had a reasonable basis in both fact and law.  We hold that respondent has established that respondent's position was substantially justified and that neither petitioners nor PCCL are entitled to an award for administrative and litigation costs under section 7430.  Petitioners' and PCCL's motions will therefore be denied.[11]

To reflect the foregoing,

Appropriate orders and

decisions will be entered.

_____

[11]  As a result of our conclusions herein, we need not decide whether the amounts of petitioners' claimed administrative and litigation costs are reasonable.